[S. F. No. 3362.   Department Two.—July 3, 1903.]

In the Matter of the Estate of MRS. M. A. WILLARD, Deceased. HENRY WILLARD et al., Appellants, v. SAMUEL DUNCAN, Administrator, and F. B. MULGREW, Respondents.

ESTATES OF DECEASED PERSONS—POWER OF ADMINISTRATOR—SETTLEMENT OF FINAL ACCOUNT—ALLOWANCE FOR SERVICES OF BROKER—JURISDICTION.—An administrator has no power to make a contract for services which will bind the court in the settlement of his final account; and an allowance cannot be made to a broker for agreed commissions on the sale of real estate. Nor can any allowance be made to the broker personally for such services. But the court, in its discretion, may make an allowance to the administrator for a reasonable compensation to a broker who has rendered valuable services in effecting a sale of real estate at a largely increased bid, whereby profit has accrued to the estate.

ID.—VOID ALLOWANCE—MOTION TO VACATE—AMENDED DECREE.—Where a void allowance was made to the broker, instead of to the administrator, as prayed for in his petition, the court had power, on motion of an objecting party, to set aside the void allowance, to amend the decree by striking out the void allowance and making a proper allowance to the administrator under the petition and original proof, so as properly to dispose of the issue, and to effectuate the intention of the court in making the allowance.

APPEAL from an amended decree of the Superior Court of Mendocino County settling the final account of an administrator. J. M. Mannon, Judge.

The facts are stated in the opinion of the court.

Robert Duncan, for Appellants.

White & Thomas, for Administrator, Respondent.

Arthur J. Thatcher, for F. B. Mulgrew, Respondent.

THE COURT.—Appeal by the heirs at law of deceased from the amended decree of settlement of account and final distribution, in so far as the account allows the sum of one thousand dollars to the administrator for the services of one F. B. Mulgrew in effecting a sale of the real estate of said estate. The administrator presented his final account and petition for distribution on May 1, 1902. The account showed, among other sources of the money sought to be distributed, an item of twenty thousand dollars for sale of real estate, and in his petition for allowance of the account the administrator stated: "That F. B. Mulgrew rendered valuable assistance in effecting a sale of the real estate in securing Burns & Waterhouse as purchasers of said land, and he would ask that your petitioner be allowed a reasonable compensation to be paid to said F. B. Mulgrew for his services in said matter." The heirs at law filed objections to the allowance of any sum for the services of said Mulgrew. Upon the hearing, the court, on May 12, 1902, made its decree allowing the account and ordering distribution, and on May 17th the decree was filed. In an amended decree, from which this appeal is taken, it is recited: "And said objecting heirs, through their said attorney, having on the twentieth day of May, 1902, filed in this court a notice of motion (three days after the first decree was filed) to vacate and set aside said order settling said final account and the aforesaid decree of distribution, together with certain affidavits in support thereof, and said motion coming on regularly to be heard on the twenty-sixth day of May, 1902, . . . and it appearing to this court that by mistake and inadvertence of this court in the said order settling the final account of said administrator the said decree of distribution did not express the true intent and meaning of the court, and was not, and is not, such order as should have been made, it is therefore ordered," etc.

1. It is urged that the part of the original decree ordering one thousand dollars to be paid Mulgrew was void, and the

court should have set aside that portion on motion of the heirs; whereas the court amended the decree in that regard, but did not disallow that item. Furthermore, it is claimed that the court had no authority to set aside the original decree on the ground of inadvertence and mistake of the court. The only substantial difference between the two decrees is, that in the first one the court ordered that the sum of one thousand dollars be paid by the administrator out of the funds of the estate to Mulgrew, as a commission for services rendered to the administrator in securing a purchaser, while in the second, or amended, decree, after reciting the services of Mulgrew, the court ordered that the administrator be allowed (in addition to the items of expenditure set out in his account) the sum of one thousand dollars in compensation for the said services of said F. B. Mulgrew in effecting said sale. Presumably, the court made the change in the decree because this court has held that the court could not allow for such services directly to the person rendering them, but could only, in a proper case, make the allowance to the administrator as expenses incurred by him. At the hearing of the motion the same evidence was before the court respecting Mulgrew's services as when the original decree was entered. Instead of allowing to the administrator the amount found to be reasonable for such services, the court made the allowance to Mulgrew, and in so doing made an order in such form as showed on its face that it was unauthorized, and that it was not in accordance with the prayer of the petitioner. The objecting heirs made the motion for the purpose, no doubt, of having the court reconsider the matter and deny the allowance in any form. But the court, thinking it a just expenditure, instead of striking out this provision from the decree, so amended the decree as to make it accomplish what the court intended, holding, of course, that the expenditure was a proper one to be allowed. The amendment simply amounted to changing the allowance from Mulgrew to the administrator, or from the wrong person to the right one. The intention of the court to make the allowance appears on the face of the decree, and the amendment does no more than to effectuate that intention, which the original decree had failed to do. In *Leviston* v. *Swan,* 33 Cal. 480, the judgment was defective in not desig-

nating the defendants who were personally liable for the debt in a foreclosure case. The court held that "inasmuch as the record shows who they were, the court had the power to amend the judgment at any time by adding a clause designating the defendants who were personally liable." In *Estate of Schroeder,* 46 Cal. 304, a personal judgment was entered against the administrator, and it appeared on the record that it should have been made payable in due course of administration. It was held that, even after the adjournment of the term, the court could direct an amendment of the judgment so as to make it correct. In the case here the court made an order which was a nullity, and which therefore failed to dispose of the issue presented by the petition. The attention of the court having been called to it by the motion, we think the court could so amend this judgment or order as to correctly dispose of the issue presented by the petition. And this the court could do, although the purpose of the motion was to have the item stricken out altogether. The contestants were still in position to test the correctness of the item, and whether it should have been allowed at all. We do not think the amendment was such a judicial error as could be remedied only by motion for new trial; as was the case in *Egan* v. *Egan,* 90 Cal. 15. (See the subject considered in *Wiggin* v. *Superior Court,* 68 Cal. 398.)

2. It appears from the evidence that the property was sold at public auction and was struck off to one Vassar for $15,500; that being the highest and best bid. Return of sale was made, stating, among other things, that the sum bid was not disproportionate to the value of the property sold, and that a sum exceeding such bid at least ten per cent, exclusive of expenses of sale, could not be obtained; that the administrator did not think he could get an increased bid of ten per cent. After the sale the administrator met Mulgrew and told him of the bid, and was informed by Mulgrew that he thought he could find a purchaser at an increased bid of twenty per cent, and asked the administrator if he would agree to pay him all in excess of that amount, or $18,600 net to the estate. The administrator replied that he did not know what authority he had to make such a contract, but would agree to this in so far as he could so act, and would agree to call attention of the pro-

bate court to all the circumstances and ask the court to ratify what he had agreed to do in the interest of the estate. Thereupon a contract was signed by the administrator, reciting the sale and the assurance of Mulgrew that he could obtain a purchaser who would pay $18,600, and further providing as follows: "Now, therefore, I agree that if said F. B. Mulgrew procures said increased bid that I will deem he has earned a commission of all of such sum in 'excess of $18,600, namely, $1,400, so procured, and to that end shall ask said new bidders $20,000 for said property, and if obtained I shall ask the judge of said probate court, in fairness to said F. B. Mulgrew, to make an order to pay to him the said sum of $1,400, or five per cent on amount of sale." It appears that Mulgrew then took the matter up with Burns & Waterhouse, who were looking elsewhere for a certain kind of property. Burns went personally, as a result of these efforts of Mulgrew, to examine the Mendocino property, and, being pleased with it, appeared at the confirmation, and, after some competition by others, bid in the property at twenty thousand dollars, and the sale was confirmed to Burns & Waterhouse. The contestants of the account offered no evidence, and there is no evidence tending to impeach the good faith of the administrator. There was evidence justifying the court in finding that the sale to Burns & Waterhouse was the result of Mulgrew's efforts. *Estate of Page,* 57 Cal. 238, and *Danielwitz* v. *Sheppard,* 62 Cal. 339, are cited by appellants as decisive of the question in favor of their contention. In the first of these cases the agreement was to pay a contingent fee to an attorney of one third of the rents and one third of the real property recovered to the estate by means of his services. The administrator embodied these agreements in his account, and asked the court to allow the amount therein agreed to be paid. It was held that the administrator could not dispose of the property of the estate in this manner. But it was not decided that the administrator could not be allowed anything as expenses of administration by way of fees of an attorney fixed by the court. On the contrary, it was said that the law authorized this to be done. In the other case cited, the action was on a contract not unlike the one now here, except that it was made by defendants as heirs, and not in any representative capacity, as found by

the lower court. It was signed by the administratrix as such and by another heir. The action was against them as heirs of the estate. The agreement was held to be invalid, even if the agreement should be treated as the individual contract of the signers thereto. In the case before us the administrator agreed to bring the matter to the attention of the court, and ask the judge, in fairness to Mulgrew, to pay him the amount agreed on. The court, in a decree, found that certain services were rendered by Mulgrew at the request of the administrator, "and that said services were such as required unusual exertion and extraordinary skill, experience, and ability," and that the agreement was that the administrator "would request this court, in the settlement of his accounts, to allow a reasonable sum and amount as compensation for said services," and the court found "that said services were and are of the reasonable value of one thousand dollars."

The court did not attempt to enforce the contract, but awarded to the administrator what it deemed a fair compensation to the broker or agent. The fact that the award happened to concur in part with the terms of the contract does not necessarily imply an enforcement of the contract. Mr. Woerner states it as a general rule: "That executors and administrators are allowed, as proper credits in their accounts, all disbursements made in good faith for any liability of the estate, either arising in the course of administration or existing against the deceased at the time of his death, and paid in the manner prescribed by law," giving numerous illustrations. (2 Woerner on American Law of Administration, sec. 514.) Where the expenditure is for the benefit of the estate, and is necessary, and is for services which it is the duty of the administrator to perform, but which he cannot himself perform, it is within the discretion of the judge to make an allowance to the administrator for such expenditure. No rule can be laid down which shall catalogue the various kinds of these expenditures or classify them. Much will depend upon the nature of the estate and upon the character of the services for which the charge is made. For example, it was said *In re Moore,* 72 Cal. 335: "We cannot lay down a universal rule that in no case should an administrator be allowed to employ a bookkeeper. This may properly be left to

the probate judge." Nor can we lay down as a universal rule that an administrator may not employ an agent to assist him in the sale of estate property. In a sense, an auctioneer is such an agent, and compensation for services of an auctioneer has often been allowed. Money paid by the administrator to expert accountants for examining the books of a partnership was held a proper expenditure. (*In re Levinson,* 108 Cal. 450.) So of attorney's fees; they cannot be allowed to the attorney, but the probate judge may allow in the account of the administrator a reasonable amount to compensate for the necessary services of an attorney.

The judgment is affirmed.

Hearing in Bank denied.