[Civ. No. 10916. First Appellate District, Division Two.—November 1, 1938.]

AURALIA LIUZZA, a Minor, etc., et al., Respondents, v. EMILIE BRINKERHOFF et al., Defendants; DOROTHY BELL SICKE, Appellant.

Morgan V. Spicer for Appellant.

James F. Brennan for Respondents.

NOURSE, P. J.—On March 15, 1928, plaintiffs obtained judgment against Emilie Brinkerhoff in an action in tort for damages. On October 17, 1928, this action was commenced by plaintiffs as judgment creditors of Mrs. Brinkerhoff to set aside as fraudulent a conveyance of real property made by Mrs. Brinkerhoff to her daughter Dorothy Bell. Prior to the trial Mrs. Brinkerhoff died, and the cause was tried as to Mrs. Bell, without a substitution as to the deceased party. Judgment for the plaintiffs was entered therein on March 23, 1933, and this judgment was affirmed on appeal on December 20, 1934. (3 Cal. App. (2d) 218 [39 Pac. (2d) 283].) On May 19, 1937, plaintiffs moved to amend this judgment and for an order of execution on the judgment as amended. These motions were granted, and Dorothy Bell appealed therefrom to the Supreme Court. A motion to dismiss the appeal was made in that court on the ground that it was frivolous and raised no substantial issue. This motion was denied, and the cause was thereafter transferred to this court for hearing and decision.

The appeal presents two questions—whether the trial court had jurisdiction to amend the judgment after affirmance on appeal, and whether it had jurisdiction to order execution to issue on the amended judgment. Both questions must be answered in the negative.

The original judgment recited that the property described was ''a part and parcel of the estate of said decedent for

the purpose of satisfying the claim of plaintiffs as herein-after set forth, and the same is hereby added thereto to become a part thereof for the purpose of satisfying said claim, and that the same, or as much thereof as is necessary, be applied to the satisfaction of the claim of said plaintiffs''. It also directed that it ''be sold for the satisfaction thereof out of the estate of said decedent in due course''. On the theory that these matters were a ''clerical misprision'' and ''matters of surplusage'' the plaintiffs moved to amend the judgment by striking them out and by inserting therein the directions that said property ''be sold for the purpose of satisfying the claim of said plaintiffs as hereinafter set forth and that the same be applied to the satisfaction of the claim of the said plaintiffs; and of the said judgment''. In granting the motion, the learned trial judge ruled that plaintiffs' counsel, who prepared the original judgment which he had signed, had acted upon a misconception of the proper procedure to be followed in such cases and upon the mistaken theory that, the conveyance being held fraudulent as against the judgment creditors, the property was to be treated as part of the grantor's estate. The recital of these facts presents the single question whether a judgment procured by a party upon his erroneous theory of law and signed by the trial judge upon that theory is subject to amendment to correct that theory after it has been affirmed on appeal. In answering the question the following observations are pertinent:

When the grantor died prior to the trial, the action against her did not abate, but the plaintiffs could then have procured the substitution of her legal representative. (Sec. 385, Code Civ. Proc.) The question would then arise whether, before proceeding with the action, they should have demanded that such representative prosecute the action to final judgment for the benefit of the creditors. (Sec. 579, Probate Code.) If the plaintiffs deemed such demand would be futile and became entitled to proceed in their own names, the judgment would follow that outlined in section 580 of the Probate Code. This procedure is expressly outlined in *Emmons* v. *Barton,* 109 Cal. 662, 668 [42 Pac. 303], where the court said: ''It is to be observed, however, that in a case like this the judgment should be that property fraudulently conveyed, or so much thereof as is necessary, be applied to

the satisfaction of the debts, and that the residue, if any, go to the grantee. It is not to go into the assets of the estate for any purpose *other than the payments of the debts.* The residue does not go to the heir; for he stands in the shoes of the fraudulent grantor.'' (Emphasis added.) Though the plaintiffs did not substitute the legal representative, nevertheless, they prepared and had entered a judgment, a judgment in full accord with the above rule, except that it did not order the residue after payment of debts distributed to the grantee,. who was ''the person from whom such property was recovered''. (Sec. 580, Probate Code.) The conclusions of law and the original decree declared that the conveyance was ''cancelled and declared null and void'' because of the grantor's fraud in which the grantee was expressly found to have knowingly participated. For this reason the trial court may have concluded that the residue should not go to the grantee. It is now argued by respondents that this was a mere clerical error, or inadvertence. It cannot be so. It may have been error to some extent, but it was judicial error pure and simple, if indeed it was error at all. It should be observed that the estate was benefited by the ''error'' and, not having been made a party, did not appeal from the judgment. In plain terms, the respondents procured the judgment they asked for. They defended it successfully on appeal. Years after its affirmance they conceived that they might have had a more favorable judgment. Whether they are correct in this view we do not decide. Suffice it to say that the judgment has long since become final and is not capable of amendment to correct a supposed error. The latest expression of our Supreme Court on this subject is found in *Estate of Burnett,* 11 Cal. (2d) 259 [79 Pac. (2d) 89], where the court says: ''Admittedly a trial court upon its own motion or on *ex parte* application, has jurisdiction to correct mistakes in its orders and records which are not actually the result of the exercise of judgment. (*Lauchere* v. *Lambert,* 210 Cal. 274 [291 Pac. 412]; *Estate of Willard,* 139 Cal. 501 [73 Pac. 240, 64 L. R. A. 554]; *Carter* v. *J. W. Silver Trucking Co.,* 4 Cal. (2d) 198 [47 Pac. (2d) 733].) But where the error is inherently judicial rather than clerical or inadvertent, the court has no power to amend its decision. (*Stevens* v. *Superior Court,* 7 Cal. (2d) 110 [59 Pac. (2d) 988]; *Drink-*

*house* v. *Van Ness*, 202 Cal. 359 [260 Pac. 869]; *Egan* v. *Egan*, 90 Cal. 15 [27 Pac. 22].)''

██ Respondents insist that the decree signed by the trial judge and duly entered by the clerk was but a ''formal judgment'' and as such was subject to amendment to conform to the findings and conclusions of law. There are two answers to this argument. There is no inconsistency or conflict between the findings, conclusions of law, and the judgment as entered. The ''formal judgment'' is the only real conclusion of law and displaces all former statements in the findings on the particular subject. (*Mason* v. *Del Valle*, 213 Cal. 30, 32 [1 Pac. (2d) 419]; *Roberts* v. *Hall*, 147 Cal. 434, 437 [82 Pac. 66]; *Delmuto* v. *Superior Court*, 119 Cal. App. 590, 594 [6 Pac. (2d) 1007]; 14 Cal. Jur. 983.)

██ As the court was without jurisdiction to amend the judgment herein, it was likewise without jurisdiction to order execution upon the amended judgment. This is so not only because the amended judgment is void for the reasons stated, but because the case is not one in which execution may issue as upon a money judgment. The action is one in equity to declare the transfer fraudulent and to impress upon the property the lien of respondents' judgment in the tort action. Respondents are creditors, not of Dorothy Bell, but of the deceased grantor, and they became creditors by reason of their judgment in the former action. Thus, in decreeing that respondents have a lien upon the property, the trial court was acting from the equity side of the court, and, if its judgment in this action is to be enforced, it must be by some equitable means, such as foreclosure. If the execution had been issued out of the tort action it would come from a money judgment, but here there is no money judgment against the only party defendant and no debt found to be due from her which could be satisfied out of the execution. The difference between an execution on an ordinary money judgment and an order for sale under a decree in equity is clearly explained in *Montgomery* v. *Meyerstein*, 195 Cal. 37, 45, 46 [231 Pac. 730], where several authorities are analyzed. The importance of the direction to sell in the decree is emphasized and the court concluded: ''It would seem to clearly follow that in the absence of any provision in the decree of the court directing a sale of the premises

upon which by said decree a lien has been imposed an ordinary writ of execution issuable to enforce a common-law judgment has no office and cannot be availed of as a substitute for an absent order of sale.''

The application of this doctrine to the present case is apparent. The original decree directed the sale through the probate court in due course of administration. If this was error, nevertheless no other direction to sell was made in the decree. But, if it was error, it was affirmed on appeal and has become final. Thus, right or wrong, respondents' remedy is to enforce the decree as made, the effect of which is to follow the sale of the property through the estate, such sale to be made subject to this lien.

The orders are reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 1, 1938, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 29, 1938.