159 Cal.App.2d 635 (1958)
Estate of MORRIS BUCKHANTZ, Deceased. FRIEDA DAVIDSON et al., Appellants,
v.
UNION BANK AND TRUST COMPANY OF LOS ANGELES, as Executor, etc., et al., Respondents.
Civ. No. 22655. 
California Court of Appeals. Second Dist., Div. Three. 
Apr. 23, 1958.
 Zagon, Aaron & Sandler and Nelson Rosen for Appellants.
 Alvin R. Isenberg for Respondents.
 VALLEE, J.
 Appeal from an order granting the petition of a testamentary trustee to transfer funds from one trust to another.
 Morris Buckhantz died testate on March 18, 1950. Appellant Frieda Davidson is his surviving sister. Appellants Leon and Louis Davidson are sons of Frieda Davidson. Respondent Jeannette Buckhantz is his surviving widow. Respondent bank was the executor of his will.
 During administration of the estate the executor paid federal estate tax in the amount of $12,052.63 and inheritance taxes in the amount of $4,602.09.
 On November 26, 1952, an order and decree was made in which the executor was ordered to exclude the community *638 interest of the widow in the estate from its computation when prorating the federal estate tax apportioned to each beneficiary, and decreed that described real and personal property of the estate and all other property except $11,414.19 "be and the same is hereby distributed to" respondent bank in trust. The decree provided: "The Trustee shall apportion the trust estate into three equal parts without being required to make physical segregation"; that the net income from two of the three parts be distributed to Jeannette Buckhantz, and that the two parts be charged with two-thirds of the expenses of administering "this trust"; and that the net income available from the remaining one part be distributed to Frieda Davidson, and that the one part be charged with one-third of the expenses of administering "this trust." It also provided:
 "The respective portions of the Trust Estate shall continue until and shall cease and terminate upon the death of the beneficiary of the respective portions of the Trust Estate as is set out hereinabove. Upon such termination, the respective portion of the Trust Estate (principal and any undistributed income therefrom) shall, after payment of any expenses of last illness and burial for Jeannette Buckhantz and Frieda Davidson, be distributed to the persons for whom the portion of said estate is then held in trust under the provisions and in the proportions herein provided, and if there be no such persons surviving, then to the heirs of Morris Buckhantz, as such heirs shall be determined according to the laws of succession of the State of California then in full force and effect." (Emphasis added.)
 The decree gave Jeannette Buckhantz the power to appoint her share of the trust estate, and provided that on the death of Frieda Davidson her share should be distributed to her sons, Leon and Louis. It specifically approved the executor's proration of the federal estate tax. An appeal was taken only from that part of the decree of November 26, 1952, which ordered the executor to exclude the community interest of the widow in prorating the federal estate tax. The part appealed from was affirmed. (Estate of Buckhantz, 120 Cal.App.2d 92 [260 P.2d 794].) The decree became final in its entirety.
 On December 18, 1952, pursuant to the decree of November 26 respondent bank, as trustee, acknowledged that it had received from the executor on behalf of the Jeannette Buckhantz fund, designated as "Trust E-477-1," a two- thirds interest in the property distributed to it amounting in the aggregate *639 to $100,092.06, and that it had received from the executor on behalf of the Frieda Davidson fund, designated as "Trust E-477-2," one- third of the property distributed to it amounting in the aggregate to $50,046.04.
 On January 25, 1955, respondent bank, as executor, filed a petition for approval of its final account and report of administration. The petition stated: after paying commissions and fees it had $1,951.03 on hand; it was still holding $2,500 which had theretofore been distributed to the trustee; it was necessary for it to distribute $6,820.17 to the trust estate for the benefit of Jeannette Buckhantz; by distributing the $2,500 to the Jeannette Buckhantz trust estate, the balance of the probate estate which will be left in the hands of the executor after the payment of the balance of commissions and fees will be $1,951.03, or a total of $4,451.03, and it would then be necessary for Frieda Davidson to pay the executor $2,369.13 for distribution to the Jeannette Buckhantz trust estate. The petition prayed that an order be made authorizing the executor to pay to the trustee "for the use and benefit of that portion of the Trust Estate in favor of Jeannette Buckhantz, the entire balance in the hands of petitioner in the sum of $1,951.03, and [a]uthorizing and ordering petitioner [the executor] to transfer and pay over to the Trustee aforesaid, for the use and benefit of the portion of the Trust Estate in favor of Jeannette Buckhantz, the above described fund in the sum of $2,500.00, and [i]nstructing and directing Frieda Davidson to pay to said Trustee for the use and benefit of the Jeannette Buckhantz portion of the trust estate, the sum of $2,369.13."
 Frieda Davidson filed objections to the petition. She prayed that the petition be denied except that the balance of $1,951.03 be ordered distributed to the trustee with instructions to apportion two-thirds to trust E-477-1 and one-third to trust E-477-2.
 On May 16, 1955, an order was made sustaining the objections except it was decreed that the $1,951.03 be distributed to the trustee for the benefit of trust E-477-1 only. The objections apparently were sustained on the ground the decree of November 26, 1952, was final and conclusive with respect to the matters as to which the executor sought instructions and directions except as to the $1,951.03 item. This order became final.
 From December 1952 to December 1955 respondent trustee carried two-thirds of the assets distributed to it as trust *640 E-477-1 with Jeannette Buckhantz as beneficiary and one-third thereof as trust E-477-2 with Frieda Davidson as the beneficiary, and orders were made settling accounts of the trustee on this basis.
 On February 26, 1957--more than four years following the decree of distribution of November 26, 1952--respondent trustee filed a petition for authority to transfer funds and for instructions. It alleged that in accordance with the decree of distribution it had divided the trust estate into two parts, one designated E-477-1, for the benefit of Jeannette Buckhantz, and the other, E-477-2, for the benefit of Frieda Davidson and her sons; in so dividing the trust estate the trustee originally made the distribution and division without the final proration and allocation of the federal inheritance tax, the distribution and division having been made before the final determination and computation of that tax. The petition quoted a provision of the will to the effect that all bequests shall be taxable to each beneficiary; that all taxes shall be first paid by such beneficiary before distribution of the bequest; that any sums so paid shall be charged to the beneficiary and deducted from the interest of such beneficiary; and that any estate and inheritance taxes "paid by the trustee" shall be deducted "by the Trustee" from the gift distributable to such beneficiary.
 The petition further alleged: the trustee received $99,715.96 by way of distribution into trust E-477-1 and $48,884.48 into trust E-477-2, and that in addition to those amounts payments were made for inheritance and state taxes on both E-477-1 and E-447-2 and on benefits received directly by Frieda Davidson, bringing the grand total necessary to provide the basis for distribution between the two trusts to $159,477.34; the inheritance and estate taxes so paid consisted of the following:
 Tabular Material Omitted
 on the basis of $159,477.34 trust E-477-1 "should have received" *641 $106,318.23 and trust E-477-2 "should have received" $53,159.11; from the $106,318.23 trust E-477- 1, having paid inheritance taxes of $369.17 and estate tax of $1,286.43, a total of $1,655.60, "should have had" the net amount due to it of $104,662.63, whereas in fact it received $99,715.96, resulting in a deficit to E-477-1 of $4,946.67; from the $53,159.11 trust E-477-2, having paid inheritance tax of $2,796.91 and estate tax of $3,784.07, a total of $6,580.98, "should have had" the net amount due to it of $46,578.13, whereas it received $48,884.48, resulting in an overpayment to E-477-2 of $2,306.35; the overpayment of $2,306.35 received by E-477-2 should be transferred by the trustee from E-477-2 to E-477-1; Frieda Davidson received the benefit of inheritance tax paid on her personal legacy in the amount of $755.44 and estate tax on her personal legacy of $1,884.88, a total of $2,640.32; the $4,946.67 consists of the overpayment of $2,306.35 and the personal overpayment of $2,640.32; in order to make the proper division and distribution of the trust estate and the two separate funds based on a proper charge and allocation of inheritance and estate tax payments, it is necessary for the trustee to transfer from E- 477-2 to E-477-1 the $2,306.35 and to receive or to withhold $2,640.32 from Frieda Davidson.
 The petition prayed for an order authorizing the trustee to take $2,306.35 from trust E-477-2 and transfer it to trust E-477-1 and to withhold from Frieda Davidson from current payments next payable to her $2,640.32 from trust E-477-2.
 Frieda, Leon, and Louis Davidson filed objections to the petition. They alleged the decree of distribution distributing the trust estate had become final and conclusive; quoted the provision of the decree directing the trustee with respect to division of the trust estate into three parts; denied that the trustee had paid any estate or inheritance taxes since the distribution of the property to it; alleged that such taxes, attributable to any property distributed to the trustee and to any legacy made directly to Frieda Davidson, were paid by the executor of the estate out of the funds in his possession prior to the orders of distribution and prior to distribution to the trustee; and the petition constitutes an attempt to vary the provisions of the decree of distribution.
 At the hearing the only evidence received was that by the decree of distribution the corpus of the trust for Frieda Davidson received an overpayment of $2,306.35; that since the decree of distribution of November 26, 1952 the trustee had *642 not paid any inheritance or estate taxes of any kind or character; the executor paid the inheritance and estate taxes; the estate tax was paid on June 15, 1951, and the final payment of inheritance taxes was made January 16, 1952; pursuant to the decree of November 26, 1952 the trustee allocated $100,092.06 to trust E-477-1 for the benefit of Jeannette Buckhantz and $50,046.04 to trust E-477-2 for the benefit of Frieda Davidson.
 The court instructed the trustee to take $2,306.35 from trust E-477- 2 and transfer it to trust E-477-1, and to withhold $2,640.32 from Frieda Davidson for current payments payable from trust E-477-2 and to transfer it to trust E-477-1. Frieda, Leon, and Louis Davidson appeal from this order.
 Appellants contend the order is erroneous because it varies and modifies the rights and obligations of the beneficiaries of the trust as stated in the decree of distribution.
 [1] It is hornbook law that the decree of distribution, when it becomes final, is conclusive as to the rights of heirs, devisees, and legatees. (Prob. Code, 1021.) It is conclusive even if erroneous and though the record itself shows that it is erroneous. (Estate of Loring, 29 Cal.2d 423, 432 [175 P.2d 524]; Miller v. Pittman, 180 Cal. 540, 543 [182 P. 50]; O'Brien v. Nelson, 164 Cal. 573, 575-576 [129 P. 985].) [2] It is a final and conclusive determination of the rights of all parties under a testamentary trust including beneficiaries of the trust. (Estate of Loring, supra, 29 Cal.2d 423, 427 [175 P.2d 524]; Estate of Van Deusen, 30 Cal.2d 285, 289-290 [182 P.2d 565].) [3] And a testamentary trustee as a devisee and legatee is bound by the decree with respect to the existence, validity of, and rights under a testamentary trust and the incidental matters which necessarily are involved in a determination on those subjects. (Wells Fargo Bk. etc. Co. v. Superior Court, 32 Cal.2d 1, 9 [193 P.2d 721].)
 At the time of the decree of distribution the court must distribute the estate to "the persons entitled thereto" (Prob. Code, 1020), and in the decree it "must name the persons and the proportions or parts to which each is entitled ..." (Prob. Code, 1021.) [4] The decree fixes the several interests of the distributees by designating the persons entitled and the proportions or parts to which each is entitled. (Cook v. Cook, 17 Cal.2d 639, 652 [111 P.2d 322].) [5] It was the duty of the probate court to determine at the time of the decree of distribution the existence of any trust created by will and the extent of any interest that could pass to the *643 trustee under the will. (Cook v. Cook, supra, 17 Cal.2d 639, 652 [111 P.2d 322]; Estate of Easter, 24 Cal.2d 191, 194 [148 P.2d 601].)
 The decree of distribution in Goad v. Montgomery, 119 Cal. 552 [51 P. 681, 63 Am.St.Rep. 145], distributed part of the estate to trustees in trust. Later it was urged the will gave the trustees powers not specified in the decree. The court answered (p. 557):
 "The decree of distribution is the instrument by virtue of which the plaintiffs have received the property in trust for the children, and their powers and duties in regard to that property are to be measured by the terms of this decree. ... Section 1665 of the Code of Civil Procedure requires the court, in making distribution of the estate, to distribute the residue of the estate in the hands of the executor 'among the persons who by law are entitled thereto,' and the provision in section 1666 that the court must name in the decree 'the persons and the proportions or parts to which each shall be entitled' requires the court in making such decree to give a construction to the terms of the will. The further provision in the same section that 'such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal,' precludes all right to impeach the decree except upon an appeal, and causes the decree to supersede the will and to prevail over any provision therein which may be thought inconsistent with the decree. The decree is conclusive, not only as to the persons who have any rights in the estate, but also as to the extent and limitation of their rights. Whether the distribution is to individuals in their own right, or to hold for others under specified trusts, the rights of all parties interested in the estate are determined by the decree. ..."
 O'Brien v. Nelson, 164 Cal. 573, says (p. 575 [129 P. 985]):
 "The appellant claims that the former administration was void or ineffectual because of the fact that the record therein shows that the court declared that the property as to which administration was had was the community property of the decedent and C. O. Nelson, her surviving husband, and distributed it all to Annie Reardon, to whom Nelson had conveyed all his title and interest therein. This does not make the proceedings or decree void. At the most it was a mere error, a mistake injurious to the persons who would have inherited the property from Annie Nelson if it had been her *644 separate estate, and which they could correct only by moving for a new trial, or by taking an appeal from said decree. In the absence of such proceedings for a review of that decree, it became final and conclusive upon all heirs, legatees, and devisees."
 In Estate of Loring, supra, 29 Cal.2d 423 [175 P.2d 524], the decree of distribution distributed assets valued at more than $150,000 to trustees with directions to pay within five years of the death of the testator $75,000 to a town in Iowa, $10,000 to Braille Institute, and various sums to sundry individuals. Less than three years thereafter and before any payment had been made by the trustees, the trust had shrunk to about $55,000. On a petition by the trustees for instructions as to the distribution of that amount the probate court held that the provisions of section 41 of the Probate Code restricting gifts to charities to one-third of the testator's estate were applicable to the bequests to the town and Braille Institute, and instructed the trustees to distribute to them one-third of the aggregate of the amount then available for distribution. On review it was held: the probate court erred; the decree of distribution was final and conclusive on the rights of the beneficiaries of the trust not only as to the rights which were necessarily in issue in the distribution proceeding but all rights determined by the decree; and the town and Braille Institute were entitled to their prorata share of the amount in the trust in proportion to the specific sums provided in the decree of distribution. The court said it might well have been that in rendering the decree of distribution the probate court "failed to consider the provisions of the Probate Code restricting charitable bequests to one-third of the estate and erroneously held all the provisions of the trust to be valid. It is settled, however, that, once final, an erroneous decree of distribution, like any other erroneous judgment, is as conclusive as a decree that contains no error" (p. 432). (Also see Estate of Van Deusen, supra, 30 Cal.2d 285 [182 P.2d 565]; Federal Farm Mtg. Corp. v. Sandberg, 35 Cal.2d 1 [215 P.2d 721]; McLellan v. McLellan, 17 Cal.2d 552 [110 P.2d 1034]; Carr v. Bank of America, 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282]; Estate of McLellan, 8 Cal.2d 49 [63 P.2d 1120]; Society of Cal. Pioneers v. McElroy, 63 Cal.App.2d 332 [146 P.2d 962]; Estate of Lingg, 71 Cal.App.2d 403 [162 P.2d 707]; Howe v. Brock, 86 Cal.App.2d 271 [194 P.2d 762]; Estate of Cecala, 104 Cal.App.2d 526 [232 P.2d 48]; Estate of Tynan, 129 Cal.App.2d 364 [276 P.2d 809]; *645 Estate of Bodger, 130 Cal.App.2d 416 [279 P.2d 61]; Estate of Weinreich, 131 Cal.App.2d 303 [280 P.2d 499]; Estate of Nash, 132 Cal.App.2d 233 [282 P.2d 184].)
 " 'By giving the notice prescribed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate, and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appears and presents his claim, or fails to appear, the action of the court is equally conclusive upon him, " 'subject only to be[ing] reversed, set aside, or modified on appeal.' " The decree is as binding upon him if he fails to appear and present his claim, as if his claim, after presentation, had been disallowed by the court.' " (Estate of Radovich, 48 Cal.2d 116, 121 [308 P.2d 14].)
 [6] Applying the foregoing principles of law it is manifest that the order appealed from changes, contradicts, and deviates from the decree of distribution. The facts, while they appear to be somewhat complicated, are relatively simple. During administration of the estate the executor paid all estate and inheritance taxes. The decree of distribution distributed property valued at $150,138.10 to the trustee. The decree directed the trustee to apportion that $150,138.10 of property into three parts without physical segregation, two parts for the benefit of Jeannette Buckhantz and one part for the benefit of Frieda Davidson. The trustee did so and allocated property of the value of $100,092.06 to trust E-477-1 for the benefit of Jeannette Buckhantz and $50,046.04 to trust E-477-2 for the benefit of Frieda Davidson. The decree was clearly erroneous. It made no provision for reducing the one-third part distributed to the trustee for the benefit of Frieda Davidson by the amount of estate and inheritance taxes previously paid by the executor attributable to that part, and it made no provision for reimbursement to the executor by Frieda Davidson personally of estate and inheritance taxes which the executor had paid with respect to property bequeathed and devised directly to her. However, as seen from the authorities cited, an erroneous decree of distribution is as final and conclusive as a decree that contains no error. The effect of the order appealed from is to increase the trust estate held for the benefit of Jeannette Buckhantz beyond an amount equal to two-thirds of the property distributed to *646 the trustee by the decree of distribution, and to decrease the trust estate held for the benefit of Frieda Davidson and her sons to less than one-third thereof contrary to the decree of distribution. To uphold the order "would be flying in the very teeth of the mandate" to divide the property distributed into three equal parts and pay the net income from two parts to Jeannette Buckhantz during her lifetime and to pay the net income from one part to Frieda Davidson during her lifetime. (Estate of Tynan, 129 Cal.App.2d 364, 366 [276 P.2d 809].)
 It is also to be observed that the order appealed from contradicts the order of May 16, 1955, which sustained Frieda Davidson's objections to the petition of respondent bank as executor in which it sought an order authorizing it to transfer $2,500 which had been distributed to it as trustee to trust E-477-1 for the use and benefit of Jeannette Buckhantz and directing Frieda Davidson to pay $2,369.13 to the trustee for the use and benefit of the Jeannette Buckhantz trust, which order became final.
 The fact that a final determination of the estate tax had not been made on November 26, 1952, when the decree of distribution was made is of no consequence. That fact does not in any way detract from the finality and conclusiveness of the decree. The decree became final irrespective of whether a final determination of the estate tax had been made. The executor paid all the estate tax before the decree; the trustee paid none.
 [7] In its conclusions of law preceding the decree of distribution of November 26, 1952, the court made the conclusion quoted in the margin. [fn. 1] Respondents rely on this conclusion as authorizing the order under review. The point is without merit. This conclusion of law was not carried into the decree of distribution. The decree unequivocally ordered and adjudged that the specific properties distributed to the trustee *647 be apportioned into three equal parts. [8] A conclusion of law which is not carried into the judgment cannot be deemed a part thereof. (Neilsen v. Neilsen, 216 Cal. 150, 152 [13 P.2d 715].) [9] The judgment is the only real conclusion of law and displaces all former statements in the findings on the subject. (Mason v. Del Valle, 213 Cal. 30, 32 [1 P.2d 419]; Liuzza v. Brinkerhoff, 29 Cal.App.2d 1, 5 [83 P.2d 976]; Valentin v. Valentin, 93 Cal.App.2d 588, 592 [209 P.2d 654].) [10] "It is well settled that the findings and conclusions of the court do not have the force and effect of an adjudication where the subject matter is not disposed of by the judgment. The force of an adjudication rests in the judgment itself, and findings not necessary to the judgment are no wise conclusive." (Guardianship of Leach, 30 Cal.2d 297, 310 [182 P.2d 529].)
 Gordon v. Vucinich, 61 Cal.App.2d 78 [142 P.2d 71], considered the effect of an order settling the final account of a guardian and for distribution. The court in the order found that Voislav Vucinich had been paid $1,306.88 in excess of his share of the estate and that that amount was owing to Desanka and Alexander, the other wards. This finding was not carried into the order for distribution which followed the finding in the same document. The probate court decreed that the estate be distributed in equal shares to the three wards. This court said (p. 81):
 "We need not determine on this appeal whether or not the probate court, in the guardianship proceeding, could have entered a judgment that Desanka recover of Voislav the sum of $756.29, or that Voislav should pay that sum to Desanka. It suffices for our purposes to note that the probate court made no such judgment. It did not even order that the share of the estate to be distributed to Desanka should be increased beyond a third, the increase to be taken from Voislav's third, in order to equalize the unequal distribution theretofore made by the guardian. Certainly the mere finding that A owes B money is not a judgment in B's favor, particularly where it is followed by a formal judgment which takes no account of the debt."
 Furthermore, the conclusion of law, if it may be considered an instruction, was directed to the executor, not to the trustee, with respect to proration of the estate tax, and the decree itself specially approved the proration of that tax made by the executor. *648
 [11] Respondents' reliance on a paragraph of the decree which is quoted in the margin is misplaced. [fn. 2] This paragraph applies only to taxes "which said Trustee shall be required to pay" and provides that "estate and inheritance taxes so paid by the Trustee shall be charged to the" beneficiary. There is nothing in the decree authorizing the trustee to prorate taxes. It does not and cannot be construed as authorizing the trustee, after the decree of distribution has become final, to charge estate and inheritance taxes paid by the executor prior to distribution to a beneficiary. As said in Goad v. Montgomery, 119 Cal. 552 (p. 561 [51 P. 681, 63 Am.St.Rep. 145]): "Although the persons named in the will as its executors are the same as those to whom the testator directed the property to be distributed in trust for his children, yet the power of sale conferred upon the executors was not given by him to them as trustees, but terminated with their discharge as executors. The fact that the two offices are held successively by the same individuals does not give to them in the exercise of one office the power that had been conferred for the exercise of the other. Their rights and duties as executors were quite distinct from the duties imposed upon them as trustees, and their powers and duties as trustees did not begin until as executors they had ceased to have any control over the property, and, as above seen, the decree of distribution is alone to be considered for the purpose of ascertaining their powers." (Also see Estate of Shaw, 85 Cal.App. 518, 520-522 [260 P. 351].) The duties of respondent bank as trustee under the decree of November 26, 1952 did not begin until that date. (Bemmerly v. Woodard, 136 Cal. 326, 331 [68 P. 1017].) *649
 If respondents had felt that the decree of distribution was erroneous or defective in not giving enough to the widow's share of the trust property and in giving too much to Frieda Davidson's share, they could have appealed therefrom and had the decree corrected. By their failure to appeal, the decree has become conclusive on them.
 Order reversed.
 Shinn, P. J., and Wood (Parker), J., concurred.
NOTES
[fn. 1] 1. "That the Federal Estate Tax shall be prorated among and paid by the beneficiaries under the decedent's Will, as follows: Each beneficiary shall pay such portion of the Federal Estate Tax as the amount received by, or for the use and benefit of such beneficiary, bears to the total property subject to the Federal Estate Tax. Jeannette Buckhantz, the decedent's widow, is liable for that prorata share of the federal estate tax which the value of the assets received by her, or for her use and benefit, is in excess of the value of her community property interest; that portion of the estate received by her, or for her use and benefit, representing her community interests created no federal estate tax, and therefore, should not be considered in prorating the federal estate tax."
[fn. 2] 2. "If the whole or any part of the Trust Estate, or the proceeds or avails thereof, shall become liable for the payment of any tax, charge or assessment which said Trustee shall be required to pay, said Trustee shall have the full power and authority, without previous notice to or demand upon any person, to pay such tax, charge or assessment. All gifts and bequests to each of the beneficiaries as herein set out shall be taxable to the donee or beneficiary, and all taxes, whether Federal, State or Municipality, shall be first paid by such donee or beneficiary before distribution to them of the said gift or bequest. Any sums so paid which are a charge against any beneficiary hereunder shall be deducted from the interest of the beneficiary so liable. Any estate and inheritance taxes so paid by the Trustee shall be charged to the donee or beneficiary and deducted by the Trustee from the gift, devise or bequest distributable to such donee or beneficiary. Other taxes shall be charged to income, provided, however, that any tax levied upon profit or gain which inures to the benefit of principal shall be paid out of principal, notwithstanding said tax may be denominated a tax upon income by the taxing authority. Improvement assessments shall be charged to principal and maintenance assessments shall be charged to income."