[L. A. No. 25596. In Bank. Aug. 5, 1960.]

Estate of THOMAS F. ECKSTROM, Deceased. MARIE E. ECKSTROM et al., Appellants, v. CITIZENS NATIONAL TRUST AND SAVINGS BANK OF LOS ANGELES (a National Banking Association), as Executor, etc., Respondent.

Larwill & Wolfe and Charles W. Wolfe for Appellants.

Cosgrove, Cramer, Diether & Rindge and J. D. Barnum, Jr., for Respondent.

WHITE, J.—This is an appeal from a *nunc pro tunc* order purporting to correct a decree of distribution in a decedent's estate.

On December 15, 1955, the Citizens National Trust and Savings Bank, as the executor of the Estate of Thomas F. Eckstrom, deceased, filed in probate proceedings its petition for distribution of the assets of the estate. By the petition the executor requested that an undivided one-third of the estate be distributed to each of three distributees, they being the two appellants herein and the aforesaid Citizens National Trust and Savings Bank as trustee of an *inter vivos* trust, respondent herein. It was further petitioned that certain amounts be deducted from each share for federal estate taxes. After hearing the petition the court ordered the executor to prepare the decree of distribution and to submit it to the appellants' attorneys for their approval. It was so prepared, approved and signed by the court after the further approval of the probate commissioner. It was entered on January 17, 1956, and has long since become final.

The decree provided that all taxes due and payable by the estate had been paid; that in accordance with the petition the federal estate tax "shall be prorated among the legatees . . . as follows: Marie Eckstrom, $46,995.28; Thomas Eckstrom, Jr., $46,995.28; Citizens National Trust & Savings Bank of Los Angeles in its capacity as Trustee of that certain Trust No. P.T. 8661, $59,327.86''; that the executor "is hereby instructed to pay to itself in its capacity as Trustee of that certain Trust No. P.T. 8661 the sum of $60,445.35 out of the balance of cash on hand as a refund of the unused portion of the money advanced to this estate by said trust for payment of estate and inheritance taxes"; and, that "the balance of cash and property hereinabove described, and all other property belonging to said estate, whether described herein or not, be and the same is hereby distributed as follows: 1. An undivided one-third (⅓) thereof to Marie Eckstrom, less deduction for Federal Estate Taxes in the sum of $46,995.28 . . .; 2. An undivided one-third (⅓) thereof to Thomas Eckstrom, Jr., less deduction for Federal Estate Taxes in the sum of $46,995.28 . . .; 3. An undivided one-third (⅓) thereof to the Citizens National Trust & Savings Bank of Los Angeles in its capacity as trustee of that certain trust known as Trust No. 8661 . . . less deduction for Federal Estate Taxes in the sum of $59,327.86.'' These provisions followed those of the prayer in the petition.

On September 18, 1957 (some 20 months after entry of the final decree), the executor filed a motion to correct an alleged error in the decree of distribution by the elimination of the provision for a deduction of $59,327.86 from the

trustee's distributive share for federal estate tax purposes. The motion was heard on February 4, 1959, by a judge other than the one who made and ordered the original decree of distribution. Nor was that judge called by the moving party to testify in regard to the circumstances of the making of the decree, although it is conceded that he was still a member of the court and available to testify. The court, after the hearing and in compliance with the motion made its ''Order Correcting Order for Distribution Nunc Pro Tunc.'' The correcting order provided, as reason for the correction, as follows: ''. . . that it appears . . . from the Petition for Distribution . . . that said Trustee, out of funds belonging to said private trust, advanced for and on behalf of said Executor the sum of $120,000.00 on account of Federal Estate Taxes due and owing by said Executor, but that said Executor petitioned for the refund to the Trustee of the sum of only $60,445.35, leaving a balance of $59,554.65 of said sum of $120,000.00 which balance the Executor did not ask to be refunded to the Trustee; that said sum of $59,554.65 included said Trustee's share of Federal Estate Taxes in the sum of $59,327.86[1], with the payment of which said Trustee was thereby credited; that it appears from said Order for Distribution that said sum of $60,445.35 was ordered repaid to said Trustee, and from the receipt of said Trustee on file herein that the same was paid; that said Order for Distribution, in accordance with a clerical misprision in the prayer of said Account, Report and Petition distributed an undivided one-third of said Estate to said Trustee, 'less deduction for Federal Estate Taxes in the sum of $59,327.86'; that the quoted language was a clerical misprision for it charged the Trustee with its share of Federal Estate Taxes, with the payment of which said Trustee had previously been credited; that said Order for Distribution as entered is not the sentence which the law ought to have pronounced upon the facts established by the record and the Court finds that said misprision was a clerical misprision. . . . The Court concludes that said quoted language was a misprision which cannot reasonably be attributed to the exercise of judicial consideration or discretion. . . .''

The appellants contend that there is no clerical error in

---

[1]The balance of the amount withheld, $226.79, was applied to California inheritance taxes on behalf of decedent's sister, as a part of the settlement of a claim asserted by her.

the record and that the *nunc pro tunc* order constitutes a direct conflict with the doctrine of finality of judgments.

 A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a *nunc pro tunc* order. (*Estate of Goldberg,* 10 Cal.2d 709, 714 [76 P.2d 508] ; Code Civ. Proc., § 473.) It cannot, however, change an order which has become final even though made in error, if in fact the order made was that intended to be made. In *Smith* v. *Smith,* 115 Cal.App.2d 92 [251 P.2d 720], the rule is expressed in the following language at page 99 : ''The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is : What order was in fact made at the time by the trial judge?'' In *Felton Chemical Co.* v. *Superior Court,* 33 Cal.App.2d 622 [92 P.2d 684], the same thought is expressed at page 627 as follows : ''But the *nunc pro tunc* order . . . is equally without legal force because it does not by its terms amend the already entered judgment to make the latter conform to the decision which the court actually rendered, but attempts to amend by new modifications and enlargements the judgment which the court originally rendered. This the court is not empowered to do. It may not make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which ought to have been so pronounced. (Freeman on Judgments, § 70, n. 2; *First Nat. Bank of Fresno* v. *Dusy,* 110 Cal. 69, 75 [43 P. 476] ; *O'Brien* v. *O'Brien,* 124 Cal. 422, 428 [57 P. 225].) Indisputably, the amendment here made does not change the judgment in important particulars, and amendments to judgments can only be made for the purpose of making the record conform to the truth, and not for the purpose of revising and changing the judgment.''

In *Estate of Buckhantz,* 159 Cal.App.2d 635 [324 P.2d 317], the same type of claimed error as in the instant case appeared in the record of the cited case. The court, in that case, stated that the error was obvious and apparent from the record. It consisted of an overcharge of federal estate and inheritance taxes to one of the distributees, and the error was admitted by all of the parties. But in respect to the power of the trial court to correct the error after the judgment had become final, the court held that ''It is hornbook law that

the decree of distribution, when it becomes final, is conclusive as to the rights of heirs, devisees, and legatees. (Prob. Code, § 1021.) It is conclusive even if erroneous and though the record itself shows that it is erroneous. (Citations.) It is a final and conclusive determination of the rights of all parties under a testamentary trust including beneficiaries of the trust." ▆ And in *Estate of Loring,* 29 Cal.2d 423, it is stated at page 432 [175 P.2d 524]: "It is settled, however, that, once final, an erroneous decree of distribution, like any other erroneous judgment, is as conclusive as a decree that contains no error."

There can be no serious dispute with the foregoing statement of the law. Questions in this area, when they do arise, usually relate to whether a particular error falls within the class of errors generally designated as clerical as distinguished from judicial, which may be corrected to the end that the amended order or judgment truly reflects the order actually made. ▆ While a clerical error is no longer to be limited to only those made by a clerk (*Brashear* v. *Gerbracht,* 128 Cal.App.2d 263 [274 P.2d 933] ; *LaMar* v. *Superior Court,* 87 Cal.App. 2d 126 [196 P.2d 98] ; *Estate of Remick,* 75 Cal.App.2d 24 [170 P.2d 96]), nevertheless, clerical errors do not include those made by the court because of its failure to correctly interpret the law or apply the facts. (*Lankton* v. *Superior Court,* 5 Cal.2d 694, 695 [55 P.2d 1170] ; *O'Brien* v. *O'Brien,* 124 Cal. 422 [57 P. 225].) ▆ It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective *nunc pro tunc* order.

The respondent contends that where the order made clearly is not that which the court *ought* to have made, it is also subject to correction. There is some supporting authority for this proposition in the following language from *Estate of Goldberg, supra,* 10 Cal.2d 709, beginning at page 715: "In 14 California Jurisprudence, pages 995, 996, the rule is thus stated: 'But the power to amend is not wholly confined to the correction of an erroneous record; it extends also to cases where some provision of or omission from an order or judgment as made or rendered was due to the inadvertence or mistake of the court and may therefore properly be treated as a clerical misprision rather than a judicial error. . . . There are many cases in which it so clearly appears that the

judgment as entered is not the sentence which the law ought to have pronounced upon the facts as established by the record, that the court acts upon the presumption that the error is a clerical misprision rather than a judicial blunder, and sets the judgment, or rather the judgment entry, right by an amendment *nunc pro tunc*. . . .' "[2] (See also *People v. Ward*, 141 Cal. 628 [75 P. 306].) In the Goldberg case a will directed that certain property be divided among four children of the decedent, the petition for distribution prayed for distribution to those entitled, and a minute order directed that a decree be prepared in accordance with the terms of the will. The decree omitted the name of one of the decedent's children, and the error was corrected by a *nunc pro tunc* order made some 35 years after entry of the decree. This seems well within the authority of the court conferred by section 473 of the Code of Civil Procedure which provides in specific language: "The court may . . . correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed. . . ."

In *People* v. *Ward, supra,* 141 Cal. 628, wherein the foregoing language also appears, the original judgment provided for a confinement "in the state at Folsom," and was corrected to provide for confinement "in the state prison of the state of California at Folsom." Such an intention was clearly indicated elsewhere on the face of the original judgment, and the judgment was subject to correction without having to rely on the liberal language quoted therein. Research has thus failed to disclose any decision wherein the quoted language has been applied in the courts of this state to correct a judgment to conform to what that judgment "ought to have" provided.

The aforesaid cases cited by us hold, for good reason, that the finality of a judgment should be recognized where intentionally, although erroneously made. While it was properly concluded in the Goldberg and Ward cases, *supra,* that the errors therein were clerical in nature, the broad language quoted therein would impress upon all judicial errors the clerical label if the "judgment as entered is not the sentence which the law ought to have pronounced" without regard, apparently, for the intention of the court in rendering the judgment. If this theory were carried to its logical and ultimate conclusion it would give to a motion made pursuant

---

[2] It is to be noted that the foregoing language quoted from 14 Cal.Jur. 995, 996, is not repeated in Cal.Jur.2d. (29 Cal.Jur.2d, Judgments, §§ 99 et seq.)

to section 473 of the Code of Civil Procedure the efficacy of a motion for new trial or an appeal long after the time for making such a motion or filing an appeal had expired. If not carried to that extreme it would, nevertheless, permit the court in each instance to determine that a particular judicial error, although resulting in an order or judgment the court intended to make, might be presumed to be a clerical misprision in order that the court could do what should have been done on motion for a new trial or an appeal. (See also *Southwestern Inv. Corp.* v. *City of Los Angeles,* 38 Cal.2d 623, 630 [241 P.2d 985], as to recall of remittitur after finality of judgment on appeal.) Neither of these results lie within the purview of section 473 nor of any inherent power of the court to correct its own error. (See *Meyer* v. *Porath,* 113 Cal.App.2d 808 [248 P.2d 984].)

 It cannot be denied that there is both an inherent and a statutory right for a court to cause its acts and proceedings to be correctly set forth in its records, where such records fail to indicate the order or direction in fact made. By its very nature, however, the right is exercisable only for the purpose of ascertaining and reflecting the truth. In most instances, as in the present case, the truth must be ascertained from the intention of the trial judge in making his original order. (*Lankton* v. *Superior Court, supra,* 5 Cal.2d 694.) There are many instances where his intention is apparent (*People* v. *Ward, supra,* 141 Cal. 628), or is a matter of record (*Estate of Goldberg, supra,* 10 Cal.2d 709).

 But the only matters bearing on the question of the judge's intentions in the case now engaging our attention are the petition for, proceedings on and the judgment of final distribution, all of which indicate that the trial judge performed an intentional, if erroneous, act. The decree complied strictly with the prayer of the petition. They both were prepared by the executor who was also the trustee prejudicially affected. The decree was approved by the attorneys for the other beneficiaries and by the probate commissioner. It cannot be determined from the face of the original decree that even a judicial error had been made. On the other hand there is nothing of significance to indicate that the court intended to make a different decree, other than the conclusion that the court ought to have done so. An examination of the petition would suggest to the discerning mind that an inconsistency existed between recitals in the petition and the prayer thereof, but there is nothing to suggest that even such an error was

clerical in nature. The moving party failed to call as a witness the trial judge who made the original order, who admittedly was available and who could testify as to an intention other than that appearing of record, if he in fact had entertained such an intention. (See *People* v. *Curtis,* 113 Cal. 68, 71 [45 P. 180].) The order made is presumed to be that intended in the absence of contrary evidence (*Livesay* v. *Deibert,* 3 Cal.App.2d 140, 146-147 [39 P.2d 466]), and the fact of error alone cannot rebut that presumption.

In view of the foregoing it must be deemed conclusive that the claimed error is judicial in nature, and that the judgment as originally made is that intended to have been made.

The order appealed from is reversed with directions to the court below to deny the motion for modification of the decree as entered.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.