[Civ. No. 20545. Second Dist., Div. Three. Oct. 11, 1955.]

LOS ANGELES LOCAL JOINT EXECUTIVE BOARD OF CULINARY WORKERS AND BARTENDERS, A. F. OF L., Respondent, v. STAN'S DRIVE-INS, INC. (a Corporation), Appellant.

Max Fink, Cyrus Levinthal and Emmet G. Lavery, Jr., for Appellant.

Alexander H. Schullman for Respondent.

VALLÉE, J.—Appeal from a judgment entered on an order confirming an award of arbitrators and denying a motion to vacate the award.

On January 15, 1952, appellant Stan's Drive-Ins, called Stan's, Clock Drive-Ins, and McDonnell's Drive-Ins entered into a written contract with respondent, called Union, providing, among other things, for the terms and conditions of employment of Stan's union employees for a period of four years with provisions for extensions. Attached to the contract and made a part of it was a document designated "Schedule A." "Schedule A," described as the "Wage Section," set up the wages to be paid per day to Stan's union employees in various classifications and an employer-paid health and welfare plan. The contract provided that "either the whole or part of 'Schedule A' may be re-opened for negotiations by either party giving written notice to the other of such action thirty (30) days prior to January 15th of any year. Such negotiations shall be subject to the provisions of Section 15 hereof. Such requests for re-opening are to concern only those items set forth in 'Schedule A.' " Section 15 provided that "Any dispute arising in connection with the annual negotiations pertaining to 'Schedule A' as provided in Section 17 which cannot be resolved by the parties within a reasonable time may be submitted by either party to the American Arbitration Association for adjudication according to the rules of the Association." No other matter was subject to arbitration by the American Arbitration Association.

On December 4, 1952, Union gave notice to Stan's, Clock Drive-Ins, and McDonnell's Drive-Ins that it wanted to reopen negotiations with respect to "Schedule A." Negotiations between the parties followed.

On July 7, 1953, Union gave notice to Stan's that it demanded arbitration of the following dispute:

"What changes, if any, should be made in wages and health and welfare provisions in the collective bargaining agreement dated January 15, 1952 between Stan's Drive-Ins and the Los Angeles Local Joint Executive Board of Culinary Workers

and Bartenders.'' Arbitrators were appointed and arbitration had. The award reads:

"It is awarded that Stan's Drive-Ins being a party to the Drive-In and Restaurant Owners Association contract of January 15, 1952 hereinbefore referred to, and bound as a member of that organization of employers thereby until January 15, 1956, it was competently represented in all bargaining pertaining to the amendment to the same agreed on by that organization through Mr. James D'Arcy and executed on behalf of McDonnell's Drive-Ins on January 15, 1953 and approved in writing for Clock's Drive-Ins on or about May 11, 1953.

"It is, therefore, further awarded that the document in evidence in this arbitrational matter, labled [sic] 'Schedule A' and Marked 'Union Exhibit No. 2,' herein and expressing the 1953 amendment to the contract between the parties is held to be equally binding upon all of the parties to the said basic agreement of January 15, 1952 and including said Stan's Drive Ins.

"It is awarded that on the basis of the relationship created between the parties hereto by the contract of January 15, 1952, and irrespective of whether the amendment of 1953 was negotiated and executed in such manner as to be binding on Stan's Drive Ins, the said Stan's Drive Ins shall grant the same wage and other increases as were granted by the other parties to such agreement to be and to become effective for tand [sic] during the year 1953.

"It is further awarded that Stan's Drive Ins shall proceed without undue delay to make all back payments which have become due under such amendment or under this award and to make future compensation and other payments consistently with it.'' Union petitioned for confirmation of the award. In an amendment to the petition, it averred:

"That said Award makes reference to a 'document in evidence in this arbitration matter, labeled ''Schedule A'' and marked ''Union Exhibit No. 2'' herein'; that a copy of said document, which was Union Exhibit No. 2 in said arbitration proceeding is attached hereto, marked Exhibit F and by this reference made a part hereof.'' The ''Schedule A'' attached to the amendment is in the same form as the ''Schedule A'' attached to the contract of January 15, 1952, except for increases in wages per day with respect to the various classes of employees, an increase in the amount to be paid

into the health and welfare fund, and an addition of a group health insurance plan.

Stan's petitioned for an order vacating the award, alleging it was made following a hearing before the board of arbitrators, the arbitrators were guilty of misconduct in that evidence was not taken as to the matters in dispute, and the award was not final and definite in that it refers to extraneous documents and does not set forth in definite terms a specific sum awarded to employees.

After a hearing the court made its order that (1) the award be corrected so as to provide that the increases granted be effective as of January 15, 1953, instead of for "the year 1953"; (2) the award be modified to provide that Stan's shall pay all back payments which shall have become due and payable under the award within 90 days after date of the order confirming the award instead of "without undue delay" as provided in the award; (3) the motion to confirm be granted subject to the corrections and modifications; (4) the document titled "Schedule A" attached to the amendment to the petition for confirmation of the award is binding on Stan's effective January 15, 1953, as an amendment of the contract of January 15, 1952; (5) Stan's has been since January 15, 1953, and is obligated to pay: (a) to employees employed by it at any time on and after January 15, 1953, the wages set out in said "Schedule A," (b) to the welfare fund, the payments set out in said "Schedule A" effective as of January 15, 1953; (6) Stan's shall pay to all employees employed by it on and after January 15, 1953, and to the welfare fund all back payments which shall have become due under said award as modified and corrected, and shall make future payments consistent with said "Schedule A." Judgment was entered in conformity with the order. Stan's appeals.

It is first contended the arbitrators exceeded their powers in that they awarded that Stan's is a member of the Drive-In and Restaurant Owners Association. The arbitrators did not in fact make an award that Stan's is a member of that association. While the award is poorly phrased, it is clear from the record that what the arbitrators did was to find as a fact that Stan's was competently represented in all bargaining pertaining to the amendment of "Schedule A" agreed on by that association through a Mr. D'Arcy, its secretary. As we have mentioned, on December 4, 1952, Union gave notice to Stan's, Clock Drive-Ins, and McDonnell's Drive-Ins that

it wanted to reopen negotiations with respect to "Schedule A," and negotiations between the parties followed. It appears from the decision of the arbitrators that they found D'Arcy was authorized by Stan's to represent it and that he did represent it in the negotiations; that Clock and McDonnell's agreed to a new "Schedule A" described in the record as "Union Exhibit No. 2," which is identical with the "Schedule A" attached to the amendment to the petition to confirm and with the "Schedule A" which the court ordered made a part of the award; and that D'Arcy, on behalf of Stan's, agreed to the same "Schedule A" as did Clock and McDonnell's.

Questions of fact and of law and the sufficiency of the evidence cannot be reviewed by the courts. (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 190 [260 P.2d 156].) The point cannot be sustained.

It is next contended the arbitrators made the award without any evidence with respect to the matters submitted. The contention is based on an affidavit of Mr. Meadow, president of Stan's and one of the arbitrators, filed in opposition to the petition to confirm. Mr. Meadow did not join in the decision or the award of the arbitrators. The affidavit states that "the Arbitrators failed and refused to take any evidence bearing upon matters submitted to arbitration, to wit, the matter of wage scales, and failed and refused to take any evidence upon the merits of the question submitted for arbitration, to wit, what changes, if any, should be made in wage provisions." The affidavit was not uncontradicted, as Stan's asserts. The decision of the arbitrators recites that written and oral evidence was received and heard, contains a discussion of the evidence, states the award is based on the proofs; and in the court below counsel for Stan's agreed that "the transcript of the arbitration proceedings does not show, that any evidence offered by Stan's that was relevant or material to the issues submitted to the arbitrators was rejected by the arbitrators." Further, having found D'Arcy was the agent of Stan's and that he on its behalf had agreed to the new "Schedule A" prior to the hearing, it was unnecessary to take evidence on the matters now suggested. The point is without merit.

The next contentions are that the arbitrators so imperfectly executed their powers that a mutual, final, and definite award upon the subject matter submitted was not made and that the court exceeded its authority by changing, altering,

and otherwise adding to and subtracting from the award. These points are made because of the fact that the arbitrators did not attach the new ''Schedule A'' which they found was binding on Stan's to the award except by implication and because the court modified the award to include it. As we have noted, the award adjudges that the document in evidence before the arbitrators, labeled ''Schedule A'' and marked ''Union Exhibit No. 2'' and expressing the 1953 amendment to the contract between the parties, is equally binding on all the parties to the contract of January 15, 1952, including Stan's. This is the document the court below made a part of its order confirming the award. ■ We agree with that court that the omission to incorporate the new ''Schedule A'' in the award was not a valid objection to confirmation. Civil Code, section 3538, says: ''That is certain which can be made certain.''

■ The same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing. (*Verdier* v. *Verdier,* 121 Cal.App.2d 190, 193 [263 P.2d 57].) ■ The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect (*Downs* v. *Kroeger,* 200 Cal. 743, 749 [254 P. 1101]), and where uncertainty is thereby made plain the defect does not necessitate a reversal. (*Vasiljevich* v. *Radanovich,* 138 Cal.App. 97, 100 [31 P.2d 802].) The same rules apply to an award of arbitrators. So construing the award, it is evident the arbitrators intended that Stan's was bound by the new ''Schedule A'' introduced in evidence before them as ''Union Exhibit No. 2.''

Section 1289 of the Code of Civil Procedure provides that on application of either party to an arbitration the superior court ''must make an order modifying or correcting the award . . . [w]here the award is imperfect in a matter of form, not affecting the merits of the controversy'' and ''[t]he order must modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.'' The correction in the present case, by incorporating the new ''Schedule A'' therein, was obviously merely one to effect the intent of the award.

■ To warrant setting aside an award on account of error, it must be shown that the rights of one of the parties are prejudiced by the award. (*Pacific Vegetable Oil Corp.* v. *C. S. T., Ltd.,* 29 Cal.2d 228, 240 [174 P.2d 441]; *Popcorn*

*Equipment Co.* v. *Page,* 92 Cal.App.2d 448, 451 [207 P.2d 647].) No such showing is made in the present instance.
Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied November 3, 1955, and appellant's petition for a hearing by the Supreme Court was denied December 8, 1955. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.