[S. F. No. 21294.    In Bank.    June 30, 1964.]

Estate of MARIA ANTONIA CAREAGA, Deceased. MARDELL YVONNE CAREAGA et al., Petitioners and Respondents, v. CHARLES M. CAREAGA et al., Objectors and Appellants.

Bressani & Hansen, Gerald B. Hansen and Clarence J. Shuh for Objectors and Appellants.

Ardy V. Barton for Petitioners and Respondents.

PETERS, J.—Mardell Yvonne Careaga and Cindy Marie Knight in 1962 moved to amend *nunc pro tunc* the final decree of distribution in the estate of Maria Careaga. The motion was made pursuant to Code of Civil Procedure section 473 "on the ground that a clerical error has been made in said decree of distribution." Superior Court Judge John

Foley of Santa Clara County granted the motion. He, by coincidence, had also entered the original decree of distribution in 1944.

Maria Careaga devised life estates to certain of her children and grandchildren with remainders over to the respective issue of the life tenants. Her will provided that if a life tenant died without issue, the remainder of that life estate was to be distributed to other residuary legatees and devisees.

Respondents, Mardell and Cindy, are great grandchildren of Maria Careaga. Each is the child of a parent who would have taken a remainder had the parent not predeceased the life tenant. Thus, as issue of life tenants, Mardell and Cindy, under the terms of the will, are prospective takers of remainders.

When the decree of distribution was entered in 1944, Mardell was 5 years old, and Cindy was not yet born. The decree, although inartfully worded, purports to carry out the intent expressed in the will. Respondents brought the present proceeding to clarify the meaning of the decree by eliminating the word "such" from that portion which relates to the disposition of certain life estates and remainders. The provision in question, with the word sought to be eliminated in italics, provides in part:

"(A) To CARLOS M. CAREAGA, JUAN T. CAREAGA, JAMES F. CAREAGA, ANTONIO F. CAREAGA, RITA Y. HAWKINS, ANGELA C. SEIFERT, MARIA ELEANOR CARR and EUGENE FRANCIS CAREAGA, grandson of decedent, and son of BERNARDO F. CAREAGA, predeceased son of decedent, 2/19 each of all of the rest, residue, and remainder of decedent's estate for and during the term of their respective lives, with remainder over to their children, born or to be born, by right of representation, and in the absence or failure of *such* issue living at the time of the death of any of said decedent's children, then to decedent's other residuary legatees and devisees. . . ." (Italics added.)

Subsequent to the hearing on the motion, Judge Foley entered his memorandum of decision which provides that:

"The petition for final distribution purports to set forth the terms of the will of the deceased and includes a prayer that the estate be distributed according to the provisions of the will.

"The decree of distribution also purports to set forth the

terms of the will in language practically identical with the language of the petition.

"In both the petition and the decree the word 'such' issue appears but it does not appear in the will.

"An interpretation and construction of the terms of the will was not requested in said petition. It seems apparent that both the petition for distribution and the decree of distribution included the word 'such' as the result of a clerical error in the preparation of said documents.

"It must be presumed that it was the intent of the petition for distribution and of the Court's action thereon in the decree to follow the language of the will."

Pursuant to this decision the court ordered its clerk to enter an "Order Settling First and Final Account of Executor and Decree of Distribution, Nunc Pro Tunc." That decree is identical to the original 1944 decree except that the word "such" has been eliminated from one of the recitals and from two of the judgment provisions, one of which is set out above. The issue presented is whether the elimination of the word "such" was in fact the correction of a clerical or of a judicial error. ■ "The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. ■ The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by the trial judge?" (*Smith* v. *Smith*, 115 Cal.App.2d 92, 99-100 [251 P.2d 720].) ■ "While a clerical error is no longer to be limited to only those made by a clerk [citations], nevertheless, clerical errors do not include those made by the court because of its failure to correctly interpret the law or apply the facts. [Citations.] ■ It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective *nunc pro tunc* order." (*Estate of Eckstrom*, 54 Cal.2d 540, 545 [7 Cal.Rptr. 124, 354 P.2d 652].) ■ "If the record shows clearly that there was no clerical error," the recital by the trial court will not be conclusive." (*Morgan* v. *State Board of Equalization*, 89 Cal.App.2d 674, 682 [201 P.2d 859].) ■ Under these tests, it is clear that a court, by means of a *nunc pro tunc* order, can clarify a decree by removing a superfluous word where its removal does not alter the meaning or legal effect of the original decree. Such a

correction is clerical.[1] Such a correction does not change the meaning or legal effect of the decree.

In the instant case, therefore, whether the *nunc pro tunc* decree corrected a clerical rather than judicial error, depends upon whether the substance of the original decree was materially changed by the deletion of the word "such." If it were not changed, the *nunc pro tunc* decree is what the trial court intended to enter at the time of the entry of the original decree. In such event, the two decrees have the same meaning, that is, the respective meanings of "such issue" in the original decree and "issue" (with the "such" deleted) in the *nunc pro tunc* decree are the same. Since "such issue" in the original decree takes its meaning from the phrase "their children," the question then becomes whether "their children," as used in the original decree, and "issue" in the *nunc pro tunc* decree have the same meaning.

The rules for interpreting judgments are well settled. A decree of distribution that has become final is a conclusive determination of the validity, meaning and effect of a will. (Prob. Code, § 1021.) ■ However, with respect to the meaning of the decree itself, the "same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing." (*Los Angeles Local etc. Board* v. *Stan's Drive-Ins, Inc.*, 136 Cal.App.2d 89, 94 [288 P.2d 286].) The general rule is that "The language of a . . . [writing] is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) There are exceptions. "The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the . . . [writing] must be construed accordingly." (Code Civ. Proc., § 1861.) ■ Where an ambiguity exists, "The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect. . . ." (*Los Angeles Local*

---

[1]If the removal of the word "such" from the original decree changed the legal effect of that decree then the evidence would not support a finding that the inclusion of that word was a mere clerical error. Judge Foley testified that he had no independent recollection of the 1944 petition or decree, and had no recollection of what order or decree he then intended to render.

*etc. Board* v. *Stan's Drive-Ins, Inc., supra,* 136 Cal.App.2d 89, 94.) ▇ Where a decree of distribution is uncertain or ambiguous, the will itself may be resorted to in order to resolve such uncertainty or ambiguity. (*Fraser* v. *Carman-Ryles,* 8 Cal.2d 143, 146 [64 P.2d 397].)

▇ We turn to a consideration of the meaning of the word "children" as used in the original decree. That instrument provides that each of several named persons is to receive a life estate with the remainders over to "their children" "by right of representation." By right of representation or per stirpes "means taking the share of an immediate ancestor, who in turn takes the share of his next immediate ancestor and so on until a common ancestor is reached." (*Maud* v. *Catherwood,* 67 Cal.App.2d 636, 644 [155 P.2d 111].) Remainders over to "their children" "by right of representation" contemplates possible remainders over to offspring of all degrees rather than merely to offspring of the first degree. A reasonable interpretation of "children" as here used is that it means "issue."

It might be urged that the intended meaning of "by right of representation" is that each offspring of the first degree shares only in the remainder of the life estate that his parent held, but that more remote offspring take nothing. At most this argument raises an ambiguity which justifies reference to the entire record.

There is still another reason for holding that an ambiguity exists with respect to the meaning of the word "children." Although "children" ordinarily means offspring of the first degree, the word is sometimes used to denote all descendents. The question is how was it used in the original decree. In the instant case the intended meaning of "children" is uncertain because the word is used in some instances to mean offspring of the second as well as the first degree.[2] Since it is

---

[2] The ambiguity arises in the following way. The recital portion of the original decree provides that:

"And it further appearing that in accordance with the provisions of the Last Will and Testament and Codicil thereto of said decedent, duly admitted to probate as aforesaid set forth, said decedent gave, bequeathed, and devised her property as follows, towit:

". . . . . . . . . . . . . . . . .

"(C) To CARLOS M. CAREAGA, JUAN T. CAREAGA, JAMES F. CAREAGA, ANTONIO F. CAREAGA, RITA Y. HAWKINS, ANGELA O. SEIFERT, MARIA ELEANOR CARR, RICHARD HENRY DANA, grandson of decedent, and son of EVANGELINA Y. DANA, predeceased daughter of decedent; and to EUGENE FRANCIS CAREAGA, grandson of decedent, and son of BERNARDO F. CAREAGA, predeceased son of decedent, 2/19 each of all of the rest, residue,

presumed that in a single instrument a word is intended to have only one meaning, it is arguable that "children" means "issue" throughout the decree. (See *Pringle* v. *Wilson*, 156 Cal. 313, 319 [104 P. 316, 24 L.R.A. N.S. 1090].) The least that can be concluded is that the intended meaning of "children" is uncertain and that the record should be considered to resolve the ambiguity.

We therefore turn to the will to resolve the ambiguity. It provides in part:

". . . (a) To CARLOS M. CAREAGA, JUAN T. CAREAGA, JAMES F. CAREAGA, ANTONIO F. CAREAGA, RITA Y. HAWKINS, ANGELA C. SEIFERT, and MARIA ELEANOR CARR an undivided one-tenth (1/10) interest each for and during the term of their natural lives with the remainder over to their children, born or to be born, per stirpes; their children taking the share and remainder to which their parent received a life estate. In the

and remainder of decedent's estate for and during the term of their respective lives, with remainder over to their children, born or to be born, by right of representation, and in the absence or failure of such issue living at the time of the death of any of said decedent's children, then to decedent's other residuary legatees and devisees. . . ."

This recital is separated into two provisions in the judgment portion of the decree. They provide:

"(A) To CARLOS M. CAREAGA, JUAN T. CAREAGA, JAMES F. CAREAGA, ANTONIO F. CAREAGA, RITA Y. HAWKINS, ANGELA C. SEIFERT, MARIA ELEANOR CARR and EUGENE FRANCIS CAREAGA, grandson of decedent, and son of BERNARDO F. CAREAGA, predeceased son of decedent, 2/19 each of all of the rest, residue and remainder of decedent's estate for and during the term of their respective lives, with remainder over to their children, born or to be born, by right of representation, and in the absence or failure of such issue living at the time of the death of any of said decedent's children, then to decedent's other residuary legatees and devisees. . . .

"(B) To RICHARD HENRY DANA, grandson of decedent, and son of Evangelina Y. Dana, predeceased daughter of decedent, 2/19 of all the rest, residue and remainder of decedent's estate for and during the term of his life, with remainder over to his children, born or to be born, by right of representation, and in the absence or failure of such issue living at the time of the death of said Richard Henry Dana, then to decedent's other residuary legatees and devisees. . . ."

The basic pattern of all three provisions is the same. The major difference is that the phrase "said decedent's children" which appears in the recital and in paragraph (A) of the judgment is replaced by the name of a grandchild, Richard Henry Dana, in paragraph (B) of the judgment. The phrase "said decedent's children" in the recital must have included Richard as well as the other named grandchild, Eugene Francis Careaga. There is sound basis to conclude that "said decedent's children" as used in paragraph (A) of the judgment also refers to children and a grandchild, Eugene.

event of the death of any of my said children without issue, his or her share shall be distributed among my other legatees and devisees named in this will. . . . (b) To RICHARD HENRY DANA, thirteen (13) years of age, son of my deceased daughter, EVANGELINA Y. DANA, and EUGENE FRANCIS CAREAGA, fifteen (15) years of age, son of BERNARDO F. CAREAGA, my deceased son, an undivided one-tenth (1/10) interest each, . . . To HAVE AND To HOLD for and during the term of their natural lives with remainder over to their children, born or to be born, per stirpes; but in the event of the death of any one of said grandchildren, with issue, his child or children to take the share or remainder to which their parent received a life estate. In the event of the death of any of said grandchildren without issue, the remainder shall be distributed among my other legatees and devisees. . . ."

The will is not ambiguous. The remainder of each life estate is to vest in the life tenant's children per stirpes. Only in the absence or failure of all issue of a given life tenant is the remainder of that life estate to be distributed to other residuary legatees and devisees. The original decree is susceptible to this interpretation and should be so construed.

Viewed in this light, the *nunc pro tunc* decree did not alter the substance of the original decree. The two decrees mean the same thing. The *nunc pro tunc* order struck out a superfluous word. Its only function was to clarify the original decree which, as we have seen, was made ambiguous by the inclusion of that word. The *nunc pro tunc* decree, therefore, was the decree which the court intended to enter at the time it entered the original decree and it should be affirmed.

The attempted appeals from the minute orders and from the memorandum of decision are dismissed. The order amending *nunc pro tunc* the decree of final distribution, and that decree as so amended, are affirmed.

Gibson, C. J., Traynor J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.

Appellants' petition for a rehearing was denied July 29, 1964.