Filed 7/21/22  Estate of Charles CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Estate of ALBERT CHARLES, Deceased. | |
| STACY CHARLES, Petitioner and Appellant, v. ALBERT A. CHARLES, as Administrator, etc., Objector and Respondent. | A163416 (Contra Costa County Super. Ct. No. P1901245) |

Petitioner Stacy Charles (Stacy) appeals from the judgment entered after the probate court denied her petition to determine inheritance rights and entered summary judgment in favor of objector Albert A. Charles (Albert), the natural son of decedent Albert Charles (decedent), acting herein as estate administrator.[1]  Stacy contends the probate court erred in finding, based on a 1978 judgment (1978 Judgment), that she was issue precluded[2] from asserting decedent was her father.  We affirm.

---

[1] We respectfully refer to the parties by their first name given their shared surname.

[2] Courts use the terms "collateral estoppel" and "issue preclusion" interchangeably.  (See, e.g., *Hernandez v. City of Pomona* (2009) 46 Cal.4th

1

## FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2019, decedent, who was unmarried, died intestate at age 86. On August 29, 2019, Albert filed a petition for letters of administration in probate court in the capacity of administrator of decedent's estate. In this petition, Albert initially identified Stacy, an Oklahoma resident, and himself, a Bay Area resident, as decedent's living children. Albert also identified a predeceased son, Gerald Charles, and a predeceased daughter, Roxanne Green, who was the mother of decedent's three living adult grandchildren.

The probate court issued letters of administration to Albert on November 7, 2019. On April 10, 2020, before orders of distribution were made, Stacy filed the aforementioned petition to determine inheritance rights (Petition) claiming an interest in one-third of decedent's estate as one of his two living children.[3] In support of the Petition, Stacy submitted a certified copy of her birth certificate, which states that she was born December 20, 1962, to Helen Richardson and decedent.

Albert sought approval from the probate court to oppose the Petition on the estate's behalf. On November 19, 2020, the court issued an order authorizing the administrator to participate in the proceeding concerning, and to oppose, the petition to determine inheritance rights. Albert thus filed

---

501, 505 (*Hernandez*); *Pike v. Hester* (9th Cir. 2018) 891 F.3d 1131, 1138.) In 2018, the California Supreme Court indicated it would "use 'issue preclusion' in place of 'direct or collateral estoppel [citations].' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) We strive to do the same, although we sometimes refer to collateral estoppel since the lower court, the parties, and the case law frequently do so.

[3] Stacy identified Albert as also having a one-third interest and decedent's three grandchildren as each having a one-ninth interest in the estate.

an opposition in which he denied that Stacy was decedent's daughter or that she was entitled to any part of decedent's estate.

In support of this opposition, Albert submitted a copy of the 1978 Judgment, issued by the Alameda County Superior Court on February 3, 1978, in *McFarland v. Charles* (Super. Ct. Alameda County, 1978, No. 490241-8). Under the 1978 Judgment, it was ordered, adjudged and decreed that "Defendant, ALBERT CHARLES, is not the father of STACEY [*sic*] LYNN CHARLES, a minor child." It was further ordered, adjudged and decreed that Helen Hines[4] was Stacy's natural mother and was obligated to provide for her support and maintenance. While it was determined Hines did not have the present ability to provide for Stacy's support and maintenance, the court reserved jurisdiction to order Hines to pay for Stacy's maintenance and support in the future, as well as to reimburse plaintiff Verna D. McFarland, Stacy's guardian, for her past support payments. The court then dismissed the complaint without prejudice as to decedent.

Subsequently produced court records[5] reflect that in 1976, Stacy, age 14, consented to McFarland's acting as her guardian ad litem for purposes of filing the underlying complaint under the Uniform Parentage Act, former Civil Code sections 207 and 248. By this complaint, McFarland and Stacy alleged that decedent was presumed to be Stacy's natural father. The 1976 complaint further alleged that Stacy had lived with McFarland continuously since 1971 except for the period from October 1975 to June 1976, that decedent was voluntarily named on Stacy's birth certificate as her father, and

---

[4] We presume Helen Hines is the same person as Helen Richardson, the person identified as Stacy's mother on her birth certificate.

[5] The court took judicial notice of nine documents from the Alameda County Superior Court proceeding.

3

that he " 'received [Stacy] into his home and has openly held out the child as his natural child.' " The 1976 complaint sought (inter alia) a judgment that decedent was Stacy's father and owed her a reasonable monthly amount in child support.

In February 1977, decedent answered the complaint by affirmatively denying he was Stacy's father. A trial was thus held January 16, 1978. Afterward, the court made the aforementioned finding that decedent was "not the father of [Stacy] . . . ." Eighteen days later, on February 3, 1978, the court entered judgment against Stacy and McFarland and in favor of decedent. No appeal was taken, and the 1978 Judgment became final.

Based on this evidence, in April 2021, Albert moved, in his capacity as administrator, for summary judgment. Albert argued that there were no triable issues of material fact and that issue preclusion was a complete defense to the Petition based on the 1978 Judgment that definitely determined Stacy was not decedent's intestate heir.

In opposition to summary judgment, Stacy claimed a triable issue of fact existed as to whether decedent was her father. Stacy submitted declarations from family members and herself attesting that, following the 1978 Judgment, decedent supported her and held her out as his child in the community. Stacy also attested to having no recollection of appearing or testifying at the 1978 trial, or hearing others testify.

On July 2, 2021, after a contested hearing, the probate court granted Albert's summary judgment motion. The court also sustained his relevance objections to Stacy's evidence relating to decedent's post-1978 actions. The court found that Albert met his burden of demonstrating a complete defense to Stacy's Petition—mainly, that she was issue precluded from claiming decedent was her father based on the 1978 Judgment. The court further

4

found that once the burden shifted to Stacy, she failed to demonstrate a triable issue of material fact that she should not be issue precluded from claiming decedent was her father.

Judgment against Stacy and in favor of Albert (as administrator) was entered the same day, prompting Stacy's timely notice of appeal on July 19, 2021.

## DISCUSSION

Stacy raises three primary arguments in challenging the probate court's finding on summary judgment that issue preclusion was a complete defense to her Petition. First, Stacy argues the 1978 Judgment is too vague and ambiguous to support the court's finding that the issue of decedent's paternity was actually litigated and necessarily decided against her in 1978. Second, Stacy argues triable issues of material fact exist as to whether she was in privity with her guardian ad litem, McFarland, for purposes of the 1978 Judgment. Third, Stacy argues that notwithstanding the 1978 Judgment, the court erred by excluding her evidence demonstrating triable issues of fact as to whether the doctrine of parentage by estoppel applied based on decedent's post-1978 actions. We address each issue in turn after setting forth the applicable legal framework.

## I.    Standard of Review.

A summary judgment motion shall be granted if the evidentiary papers submitted and independently reviewed by the court show there are no triable issues as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.) A defendant "may move for summary judgment in an action or proceeding if it is contended that the action has no merit," such as when the defendant contends there is a

5

complete defense to the action.  (Code Civ. Proc., § 437c, subds. (a), (o)(2).)  If the defendant meets this burden, the burden shifts to the plaintiff to demonstrate a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2).)  "[T]o defeat the motion for summary judgment, the plaintiff must show ' "specific facts," ' and cannot rely upon the allegations of the pleadings." (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805 (*Horn*).)

"We review the trial court's decision [on summary judgment] de novo, considering all of the evidence the parties offered in support of and against the motion, and the uncontradicted inferences reasonably deducible from the evidence, except that to which the court sustained objections."  (*Paz v. State of California* (2000) 22 Cal.4th 550, 557.)  In performing this de novo review, we view the evidence in the light most favorable to Stacy as the losing party, liberally construing her admissible evidence and strictly scrutinizing that of Albert, so as to resolve any evidentiary doubts or ambiguities in Stacy's favor. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)

## II. Issue Preclusion.

"Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.]  Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824, italics omitted.) Issue preclusion applies if there was (1) a final adjudication (2) of an identical issue (3) that was actually litigated, (4) necessarily decided, and (5) asserted against one who was a party in the first suit or one in privity with that party. (*Id*. at p. 825; accord, *Hernandez, supra,* 46 Cal.4th at p. 511 [identifying same factors for applying collateral estoppel].)  The party asserting issue

6

preclusion has the burden of establishing the requirements for applying the doctrine. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

Under this standard, "an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.] In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts. [Citations.] 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]' " (*Hernandez, supra*, 46 Cal.4th at pp. 511–512.)

Privity, in turn, refers to " ' " ' "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] . . . ." ' " ' " (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 229–230 (*Planning & Conservation League*).) Privity also has constitutional implications. " ' "In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." ' " (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 92.)

Last, "[e]ven when the threshold requirements are satisfied, courts may not apply issue preclusion if considerations of policy or fairness outweigh the doctrine's purpose in a particular case. (*Lucido v. Superior Court, supra*, 51 Cal.3d at p. 343.) ' "In deciding whether the doctrine is applicable in a

7

particular situation a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." ' [Citation.]" (*Bullock v. City of Antioch* (2022) 78 Cal.App.5th 407, 416.)

### A. *The issue of paternity was actually litigated and necessarily decided in 1978.*

The 1978 Judgment, entered under the Uniform Parentage Act (former Civ. Code, §§ 240, 247), decreed, "Defendant, ALBERT CHARLES [i.e., decedent] is not the father of plaintiff, STACEY [*sic*] LYNN CHARLES, a minor child." The court's judgment of nonpaternity in 1978 is determinative for purposes of this case under Family Code section 7636, which provides: "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes except for actions brought pursuant to Section 270 of the Penal Code." (Fam. Code, § 7636; see Cal. Law Revision Com. coms., Deering's Ann. Fam. Code (2006 ed.) foll. § 7636, p. 584 ["This section is similar to Section 15(a) of the Uniform Parentage Act (1973)"].)

Despite this clear language in the 1978 Judgment and Family Code section 7636, Stacy claims it is unclear whether the trial court in 1978 actually litigated and necessarily decided the issue of decedent's paternity. Not so.

As with any other form of writing, we interpret the 1978 Judgment by giving the language its ordinary meaning to the extent the language is clear. (*Estate of Careaga* (1964) 61 Cal.2d 471, 475; Civ. Code, § 1644.)

Here, to create ambiguity, Stacy relies on a stipulation the parties made in the 1978 proceeding for purposes of trial. According to the trial minutes, after the matter was called, the court read into the record the parties' stipulation that "[decedent] was not the biological father of [Stacy],

8

which stipulation was without prejudice to the plaintiffs asserting that [decedent] was the father of [Stacy] by reason of his being estopped from denying such fact." According to Stacy, this stipulation rendered the 1978 Judgment ambiguous because even if decedent was not her biological father, she and McFarland could have subsequently proved at trial "that she is the daughter of decedent pursuant to the parentage by estoppel doctrine codified in Family Code sec[tion] 7611(d)."[6] Stacy asks that we presume they did so.

Stacy is mistaken. The 1976 complaint filed by McFarland on Stacy's behalf specifically raised the theory of parentage by estoppel. In paragraph 2 of the second cause of action, it was alleged that "defendant ALBERT CHARLES is presumed to be the natural father of minor plaintiff in that, with his consent, he is named as the child's father on the child's birth certificate and *he has received the child into his home and has openly held out the child as his natural child*." (Italics added.) By way of relief, the 1976 complaint sought an order that "defendant ALBERT CHARLES be adjudged to be the father of [Stacy]." Then, the trial minutes show that the court, *after* reading the stipulation, received documentary evidence and heard witnesses, including Stacy, McFarland and decedent (who testified twice, as both an adverse witness and on his own behalf). It was only afterward that the court found decedent was "not the father of [Stacy] . . . ." Thus, while the stipulation was limited to the fact that decedent was not Stacy's "biological father," the judgment went further, adjudging decedent was not her "father."

This record reflects that the court was aware of the implication of using the term "father" more broadly, as opposed to using the specific term

---

[6] Family Code section 7611, subdivision (d) provides that a person is presumed to be the natural parent of a child if he or she "receives the child into their home and openly holds out the child as their natural child."

9

"biological father" or "presumed father." For purposes of the stipulation, the court chose the more restrictive term, "biological father." For purposes of the 1978 Judgment, the court chose the broader term. We will not imply the presence of the more restrictive term in the 1978 Judgment's straightforward decree that decedent was not Stacy's "father" in all senses of the word. (E.g., *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120 [under general contract principles, "implied terms cannot vary the express terms of a contract"]; *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 169 ["Implied terms 'are disfavored at law' "].) Thus, when Stacy and McFarland declined to file an appeal, the judgment that decedent was not Stacy's father became final. (*People v. Quarterman* (2012) 202 Cal.App.4th 1280, 1290 [a decision is final for purposes of collateral estoppel when it is " 'free from direct attack' "].)

In reply, Stacy speculates that the trial may have been limited to the financial ability of Stacy's mother, Helen Hines, to pay child support, leaving for another day the issue of parentage by estoppel. Stacy offers no evidentiary support for this theory, which, again, is contrary to the clear language in the 1978 Judgment by which the court determined decedent was not Stacy's father. As such, Stacy's theory does not suffice to defeat summary judgment. (*Horn, supra*, 72 Cal.App.4th at p. 805.)

We therefore conclude the issue of whether decedent was Stacy's father was actually litigated and necessarily decided against her for purposes of the 1978 Judgment.

## B.     *Stacy was in privity with McFarland.*

Stacy next contends the probate court erred by ruling that she was in privity with McFarland, her guardian ad litem, for purposes of the 1978

10

Judgment, claiming there was "no evidence" to support this ruling. The record is otherwise.

" 'A party is adequately represented for purposes of the privity rule "if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action. [Citation.]" [Citation.] We measure the adequacy of "representation by inference, examining whether the . . . party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that . . . party had a strong motive to assert that interest. If the interests of the parties in question are likely to have been divergent, one does not infer adequate representation and there is no privity. [Citations.] If the . . . party's motive for asserting a common interest is relatively weak, one does not infer adequate representation and there is no privity. [Citation.]" [Citation.]' [Citation.]" (*Planning & Conservation League, supra*, 180 Cal.App.4th at p. 230.) Assessing privity "requires a close examination of the circumstances of each case and depends upon the fairness of binding plaintiffs with the result obtained in the prior grievance proceeding in which they did not participate. [Citation.] The issue is reviewed de novo because it ' " ' "involves the requisites and limits of due process . . . ." ' " ' " (*Bullock v. City of Antioch, supra*, 78 Cal.App.5th at p. 419.)

Here, the record reflects that on December 29, 1976, an application for order appointing guardian ad litem was filed wherein Stacy, age 14, stated under penalty of perjury that she desired and consented to McFarland's appointment as her guardian ad litem for purposes of their Uniform Parentage Act action. McFarland, in turn, stated under penalty of perjury that Stacy had lived with McFarland continuously since 1971 except for the period from October 1975 to June 1976 and that they were bringing the

11

action to enforce decedent's child support obligations as Stacy's father. McFarland further attested that she was "competent, willing and able to represent [Stacy] in this action . . . ." In their action, McFarland and Stacy were represented by a single attorney, Thomas V. Roland.

This evidence reflects that McFarland had been serving as Stacy's longtime custodian and provider of her maintenance, care and support when the 1976 complaint was filed. McFarland and Stacy had a mutual, substantial interest in establishing decedent's paternity and procuring a court order requiring him to pay a reasonable monthly amount for Stacy's support, and to reimburse McFarland for payments she previously made. Thus, this is not a case where the guardian ad litem had a weak personal motive in representing a minor's interests. On the contrary, both McFarland and Stacy stood to gain personally and financially by successfully litigating under the Uniform Parentage Act. And while their effort was not ultimately successful, Stacy directs us to no evidence tending to show that McFarland in any way shirked her obligation during their lawsuit to promote Stacy's legitimate interests in determining decedent's paternity. (See *Carachure v. Scott* (2021) 70 Cal.App.5th 16, 31 [" ' "The guardian [ad litem] may make tactical and even fundamental decisions affecting the litigation but always with the interest of the guardian's charge in mind. . . ." . . . "[S]hould a guardian ad litem take an action inimical to the legitimate interests of the ward, the court retains the supervisory authority to rescind or modify the action taken" ' "].) Accordingly, we affirm the probate court's finding of privity between Stacy and McFarland with respect to the 1978 Judgment as consistent with both the evidence and notions of due process.

## C. *Evidence of decedent's post-1978 acts was properly excluded.*

Last, Stacy contends the probate court erred by refusing to consider "overwhelming evidence of parentage by estoppel" based on decedent's alleged conduct after the 1978 Judgment whereby he held her out to others in the family and community as his daughter. Again, she is wrong. The court properly excluded this evidence under principles of issue preclusion. The fact that decedent was not Stacy's father was definitively established by the 1978 Judgment. Accordingly, the declarations that Stacy offered attesting to decedent's post-1978 acts that tended to prove parentage by estoppel were irrelevant.

## DISPOSITION

The judgment is affirmed.

_____
Jackson, P. J.


WE CONCUR:


_____
Burns, J.


_____
Wiseman, J.*


A163416/*Charles v. Charles*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.