Filed 6/5/24  Marquez v. Marquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EZEQUIEL MARQUEZ,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANGELITA MARQUEZ,<br><br>Defendant and Appellant. | F086161<br><br>(Super. Ct. No. 07CECG01672)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi C. Kapetan, Judge.

Quinlan, Kershaw & Fanucchi and Edward L. Fanucchi for Defendant and Appellant.

Proper Defense Law Corporation, Justin N. Vecchiarelli and Wesley L. Carlson for Plaintiff and Respondent.

-ooOoo-

After Ezequiel Martinez sued his ex-wife Angelita Martinez alleging fraudulent transfer of his interest in jointly owned real property, the parties entered into a written settlement agreement requiring Angelita to refinance the property within 90 days and pay Ezequiel his interest in the property and, if she could not do so, sell the property with the

equity split between the parties.  Ezequiel subsequently filed a motion for entry of judgment pursuant to the settlement agreement under Code of Civil Procedure section 664.6.[1]  In September 2012, the trial court granted the unopposed motion and ordered Ezequiel's attorney to prepare a proposed judgment for the court's signature, which he failed to do.

Just over 10 years later, Ezequiel filed a motion for authority to sell the property, which Angelita opposed, arguing the settlement was invalid.  In April 2023, the trial court treated the motion as a request to enforce the parties' out-of-court settlement agreement under section 664.6, granted the motion, and entered judgment ordering the sale of the property as specified in the settlement agreement.

On appeal, Angelita contends the 2023 judgment is void because the trial court did not have jurisdiction to enter it.  She asserts the 2012 order was a judgment subject to the Enforcement of Judgments Law (§ 680.010 et seq.), which prohibits the enforcement of money judgments and judgments for the sale of property after 10 years from the date of their entry (§ 683.020).  She argues that since over 10 years had elapsed since the date of entry of the 2012 order when Ezequiel filed his motion for authority to sell the property, the trial court did not have the power to order the sale of the property.  Finding no merit to Angelita's contentions, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2007, Ezequiel filed a complaint against Angelita alleging claims for quiet title, cancellation of instrument to void interspousal transfer deed procured by forgery, slander of title, and declaratory relief.  The complaint alleged as follows.  Ezequiel and Angelita divorced in August 1985, with the judgment of dissolution filed in May 1985.  In June 1989, a grant deed was filed which granted real property to "Ezequiel Marquez and Angelita Marquez, Husband and Wife as Joint Tenants," and made them "legal and/or equitable owners of the property."  This property "was not divided nor awarded to"

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

2.

Angelita in the dissolution action. In February 2006, an interspousal transfer deed was recorded which identified the grantors as Ezequiel and Angelita, "husband and wife as joint tenants," and the grantee as Angelita, "a married woman as her sole and separate property." Ezequiel did not contract to transfer his interest in the property to Angelita and he did not sign the interspousal transfer deed. Ezequiel believed his signature was forged and that the transfer deed was prepared, executed, and recorded without his knowledge or consent.

Angelita answered the complaint as a self-represented litigant. Among other things, Angelita admitted her signature was on the interspousal transfer deed, but she did not know if Ezequiel signed it. She denied that Ezequiel's signature was forged, asserted that Ezequiel abandoned the home in 1995 and had not paid anything toward its maintenance or mortgage since then, and denied that the transfer deed was prepared, executed, and recorded without Ezequiel's knowledge or consent.

The litigation continued until August 2009 when the parties, who were then both represented by counsel, settled the matter following a mandatory settlement conference. According to the register of actions, the following settled case status conferences were held after the parties reached their settlement: (1) in August 2010, when Ezequiel stated he obtained a second appraisal; (2) in November 2010, when Ezequiel made an oral request to enforce the settlement and the parties were ordered to meet and confer about disputed issues; and (3) in December 2010, when the parties argued about the value of the property and the court stated it would not set any further hearings.

### The Motion for Entry of Judgment Pursuant to Section 664.6

In June 2012, after the matter was set for a dismissal hearing, Ezequiel filed a motion to enter judgment pursuant to section 664.6[2] on the ground that the parties settled the case. Ezequiel requested the court "to enter judgment pursuant to the settlement."

---

[2] When the motion was made, section 664.6 provided: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion,

3.

Ezequiel's attorney stated in a declaration that: (1) the parties entered into a "mediated settlement agreement" on August 26, 2009, which was attached as an exhibit; (2) the litigation resulted from Angelita removing Ezequiel's "name from title to the property by allegedly fraudulent means"; (3) while the parties agreed that Angelita would refinance the property and pay Ezequiel his equity in the property, Angelita failed to refinance in the time allotted; (4) Ezequiel then tried to sell the property pursuant to the settlement agreement but he was unable to sell the property because property values had taken a downturn due to the recent economic crisis; and (5) reducing the settlement agreement to a judgment would preserve Ezequiel's title rights. Ezequiel's attorney requested "that the settlement agreement be entered as judgment of the court."

Paragraph 5 of the handwritten settlement agreement sets out the terms of the settlement as follows: "The parties have agreed to settle their dispute as follows: [¶] (5) 1. Angelita Marquez may refinance the subject property within 90 days and pay to Ezequiel Marquez 1/2 of net proceeds of the appraised value of the property at the time of refinance minus current encumb[]rances which are represented to be approximately $64,000.00 plus $5,000 to Mr. Ezequiel Marquez. [¶] (5) 2. Should Angelita Marquez fail to refinance the subject property, the property shall be immediately listed for sale by a licensed real estate broker. Listing price shall be established by a mutually agreed upon real[]tor. [¶] (5) 3. The parties shall share equally in the costs of refinance/origination fees; or in the event of sale to a third party, they shall share equally the cost of sale …. [¶] (5) 4. In the event of the inability to refinance by Angelita Marquez, ~~Ezequiel Marquez agrees to pay for appraisal of the subject property.~~ ~~Ezequiel Marquez shall~~ receive net proceeds from third party sale as stated in paragraph (5)(1). [¶] (5) 5. The parties agree not to dismiss this case until the agreement is effectuated as contemplated

may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (Former § 664.6 (Stats. 1994, ch. 587, § 7).)

herein.  [¶] (5) 6. Both parties agree not to voluntarily encumber the subject property without the consent of the other party now or in the future.  [¶]  (5) 7. The court shall retain jurisdiction to enforce this agreement pursuant to CCP 664."

The parties further agreed to execute any documents to effectuate the agreement, that they would bear their own attorney fees and court costs upon dismissal of the action, and if further litigation was "required to enforce the terms of this agreement, the prevailing party therein shall be entitled to recover reasonable attorney's fees and court costs."  Finally, the agreement provided that if there was a dispute over the approved value of the property obtained by Angelita, Ezequiel could pay for a second appraisal.  The settlement agreement was signed by the parties and their attorneys.

Angelita did not file an opposition to the motion or appear at the September 5, 2012 hearing on the motion, which was not reported.  Ezequiel's counsel appeared and argued the motion.  That same day, the trial court issued a one-page law and motion minute order, on which a box is checked next to the statement, "Motion for Entry of Judgment is granted," and the box for "Other" is checked next to which is typed: "Counsel is instructed to provide the Court with a proposed judgment for signature" (the 2012 order).  The settlement agreement is not attached to the 2012 order and is not incorporated into the order.  The court clerk mailed the 2012 order to counsel for the parties on September 7, 2012.

The record does not reflect that Ezequiel ever submitted a proposed judgment or that the trial court issued a formal judgment on the 2012 order.

### The Motion for Authority to Sell Real Property

On October 5, 2022, 10 years and one month after the 2012 order was entered, Ezequiel, who was representing himself, filed a motion for an "ORDER FOR AUTHORITY TO SELL REAL PROPERTY."  Ezequiel stated in a declaration that he was moving for an order to allow him to sell the property because:  (1) "the Court granted an Entry of Judgment on this case on September 5, 2012"; (2) Angelita refused to comply

with the mediated settlement agreement; (3) after "Entry of Judgment was entered on September 5, 2012," he had been in "constant communication" with Angelita, but he could not obtain her cooperation; and (4) he believed he had given her "enough time to finalize our settlement agreement regarding the house" and he had made all mortgage payments on the house, which was "now free and clear."

Ezequiel asked the court to: (1) hold Angelita in contempt for removing his name from the title to the property, failing to refinance the property within the time allotted, and taking out a loan against the property without his consent and knowledge; and (2) allow him to immediately sell the property and award him his share of the equity plus $5,000. Attached to the motion were the 2012 order and the June 2012 motion to enter judgment pursuant to section 664.6, with the handwritten settlement agreement attached.

Angelita, represented by counsel, filed an opposition to the motion. She argued that because the August 2009 mediation was not a binding mediation, the September 5, 2012 "Order for Entry of a Judgment on a Mediated Agreement" and Ezequiel's current motion were improper, and it was apparent neither Angelita nor her counsel appeared at that hearing. Angelita further complained that a trial on the issues raised by the complaint had not been held. Angelita asked that the motion be taken off calendar "to enable proper discovery to ensue on the issues."

Ezequiel, who was now represented by counsel, filed a reply in support of his motion. Ezequiel asserted that Angelita's argument that there was not a settlement agreement because the mediation was not binding should be given no weight or consideration. Ezequiel stated he was asking the "court to rule the exact same way that it did on September 5, 2012," and "enter judgment ordering [Angelita] to list the subject property … for sale at a listing price set by a mutually agreeable real estate broker pursuant to Section 5(2) of the Settlement Agreement and for [Ezequiel] to receive one-half of the net proceeds of the sale of the subject property along with an additional $5,000.00."

6.

Ezequiel asserted the trial court had personal and subject matter jurisdiction to enforce the settlement agreement pursuant to section 664.6, as the settlement agreement "provides that 'the court shall retain jurisdiction to enforce the agreement pursuant to CCP 664' in Section 5(7)," and neither party objected to the court having jurisdiction to resolve the matter. Ezequiel further asserted the trial court had broad authority to enforce the settlement agreement's terms.

The day after the reply was filed, Angelita filed her declaration in which she stated that she did not understand she was entering into a binding agreement when she signed the settlement agreement, and her then-attorney insisted she sign the agreement even though she "was not in accord with it." Angelita explained that she and Ezequiel purchased the property after their divorce, and he lived in the house with her. She asserted he never made any payments on the house, but he constantly pressured her to sell it. She further asserted Ezequiel deeded the property to her on February 7, 2006.

After the trial court issued a tentative ruling granting the motion, a hearing on the motion as held on April 11, 2023, which counsel for both parties attended. After the matter was argued and submitted, the trial court adopted the tentative ruling as the order of the court. The trial court treated the motion as "a request to enforce the parties' out-of-court settlement agreement signed on August 26, 2009." The trial court found none of Angelita's arguments had merit, as it was immaterial that the settlement agreement resulted from a non-binding mediation since the agreement satisfied the requirements of section 664.6, or that there had not been a trial on the merits.

The trial court further explained that it determined at the September 5, 2012 hearing that the settlement agreement was enforceable under section 664.6, and Angelita had notice of the motion but did not file an opposition. The trial court stated that "order is long-since final," and the fact that Ezequiel's "former attorney failed to submit a form of judgment, as he was directed to do, does not change the analysis." Accordingly, the

7.

trial court found Angelita's attempts to attack the validity of the settlement or the complaint's allegations unavailing.

Accordingly, the trial court granted "the motion to enforce settlement and enter judgment pursuant to the settlement agreement, as adjusted to reflect the current status (e.g., the time defendant was given in the settlement agreement to refinance the property has already passed)." The trial court directed Ezequiel to submit a proposed judgment with revisions that were specified in the order.

The trial court entered the judgment on April 12, 2023 (the 2023 judgment). The judgment stated that Angelita entered into a binding written settlement agreement on August 29, 2009, in which she and Ezequiel resolved their disputes concerning the ownership and related issues concerning the property.

The judgment set forth the following settlement terms: (1) Angelita "had the opportunity to refinance the Property within 90 days of August 26, 2009 and to pay [Ezequiel] one-half (1/2) of the net proceeds of the appraised value of the Property minus any current encumbrances plus an additional $5,000.00 to be paid to [Ezequiel]"; (2) if Angelita failed to refinance, "the Property shall immediately be listed for sale by a licensed real estate broker at a price determined by a mutually agreed upon realtor"; (3) Angelita and Ezequiel "shall share equally in the costs of the refinance, or, associated with the sale of the Property"; (4) if Angelita could not refinance the property and it was sold to a third party, Ezequiel would receive one-half of the net proceeds of the sale of the property minus any current encumbrances plus $5,000; and (5) the court would retain jurisdiction to enforce the settlement agreement pursuant to section 664.6. The judgment further stated that Angelita failed to: (1) refinance the property within 90 days of August 26, 2009; (2) list the property for sale; and (3) as of April 11, 2023, sell the property.

The judgment ordered Angelita to immediately list the property for sale by a mutually approved licensed California real estate broker, and if the parties could not agree on a broker within two weeks, Ezequiel could submit an ex parte application

requesting the court to select the broker. The judgment further ordered: (1) the listing price would be the amount the real estate broker determined; (2) the parties would evenly split all costs incurred and associated with the sale of the property; (3) Ezequiel would receive one-half of the net sale proceeds plus $5,000; (4) Angelita would promptly execute all documents necessary to complete the sale and if she failed to do so, the court clerk would be appointed as an elisor to execute the necessary documents to complete the sale on her behalf; and (5) Ezequiel could file a noticed motion seeking an award of attorney fees and costs incurred in connection with the motion, as well as any litigation required to enforce the settlement agreement's terms.

## DISCUSSION

Angelita contends the 2023 judgment is void because the trial court lacked jurisdiction to enter it since more than 10 years had passed since the 2012 order was entered. She asserts the 2012 order is a judgment within the meaning of section 683.020 of the Enforcement of Judgments Law, which provides: "Except as otherwise provided by statute, upon the expiration of 10 years after the date of entry of a money judgment or a judgment for possession or sale of property: [¶] (a) The judgment may not be enforced. [¶] (b) All enforcement procedures pursuant to the judgment or to a writ or order issued pursuant to the judgment shall cease. [¶] (c) Any lien created by an enforcement procedure pursuant to the judgment is extinguished."

The period of enforceability of such judgments may be extended by renewal of the judgment, which is accomplished by the judgment creditor filing an application for renewal with the court in which the judgment was entered before the expiration of the 10-year period of enforceability provided by section 683.020. (§§ 683.110, subd. (a), 683.120, subd. (a), 683.130, subd. (a).) Even if the judgment is not enforced or renewed within the 10-year enforcement period of section 683.020, section 683.050 authorizes a separate action on the judgment which must be commenced within the 10-year limitations

9.

period prescribed by section 337.5.[3]  (*Pratali v. Gates* (1992) 4 Cal.App.4th 632, 637–638.)

Angelita claims section 683.020 applies to the 2012 order, and since Ezequiel filed his October 2022 motion for authority to sell the property more than 10 years after entry of the 2012 order without renewing the order, the trial court did not have the authority to enter the 2023 judgment that enforced the 2012 order.  Angelita concedes that she did not raise this issue in the trial court, but she asserts we nevertheless can address the issue because it involves the trial court's subject matter jurisdiction.

### Angelita May Raise This Issue on Appeal

A judgment is void when a court lacks fundamental jurisdiction, meaning it has no authority over the subject matter or the parties, or it lacks any power to hear or determine the case.  (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339 (*Kabran*).)
" ' "[A] claim based on a lack of … fundamental jurisdiction[] *may be raised for the first time on appeal*." ' "  (*Ibid.*)

Conversely, a judgment is voidable, not void, when a court has fundamental jurisdiction, but acts in excess of its jurisdiction by violating procedural requirements, ordering unauthorized relief, or failing to act in the manner prescribed by the law.  (*Kabran*, *supra*, 2 Cal.5th at pp. 339–340.)  "Because a court that acts in excess of jurisdiction still has 'jurisdiction over the subject matter and the parties in the fundamental sense' [citation], any such act is 'valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time.' "  (*Id.* at p. 340.)

---

**3**      Section 683.050, subdivision (a) provides:  "Except as provided in subdivision (b), nothing in this chapter limits any right the judgment creditor may have to bring an action on a judgment, but any such action shall be commenced within the period prescribed by Section 337.5."

Section 337.5, subdivision (b) provides that "[a]n action upon a judgment or decree of any court of the United States" must be brought within 10 years.

Angelita contends the trial court did not have fundamental jurisdiction to enter the 2023 judgment because section 683.020 prohibited it from enforcing the 2012 order once the 10-year enforcement period of section 683.020 expired in September 2022.[4]  (See Cal. Law Revision Com. com., West's Ann. Code Civ. Proc. (2024 ed.) foll. § 683.020 ["a judgment is enforceable only for 10 years; at the end of this period, enforcement of the judgment is barred and any liens created by the enforcement process are extinguished.  No further action, including levy, sale, collection, or delivery pursuant to the judgment … may take place"].)  Angelita asserts that since fundamental jurisdiction is at issue, she was not required to raise the issue in the trial court.

Ezequiel contends the second type of jurisdiction, which he calls "Decisional Jurisdiction," is at issue here.  (*Kabran*, *supra*, 2 Cal.5th at pp. 339–340.)  He asserts the 10-year enforcement period of section 683.020 is akin to a statute of limitations, which is non-jurisdictional such that if the defendant does not raise an objection to an untimely complaint in the trial court, it cannot be raised for the first time on appeal.  (*Kabran*, *supra*, 2 Cal.5th at p. 341; *Samuels v. Mix* (1999) 22 Cal.4th 1, 8 [statute of limitations defense is forfeited if the defendant never pleads it].)

While it is presumed that courts "have jurisdiction unless specifically curtailed by the Legislature" and " 'time limits are typically deemed directory,' " these presumptions are rebuttable and "time limits to have jurisdictional significance where the Legislature clearly so intends."  (*Kabran*, *supra*, 2 Cal.5th at pp. 342–343.)  Thus, the presumption that time limits are directory may "be overcome where ' "a consequence or penalty is provided for failure to do the act within the time commanded," ' " or "the consequences of holding a time limitation mandatory or jurisdictional 'would defeat or promote the purpose of the enactment.' "  (*Id.* at p. 343.)  Ultimately, the question is one of legislative intent.  (*Ibid.*)

---

**4**    It is undisputed that Ezequiel did not apply for renewal of the 2012 order.

The text of section 683.020 reveals a clear legislative intent to deprive the courts of power to enforce expired judgments. (*Kabran*, *supra*, 2 Cal.5th at p. 343 [when construing a statute, we start with the statute's language, " ' "giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose" ' "].) The statute explicitly states that once 10 years after the date of entry of the judgment expires, "(a) [t]he judgment may not be enforced," "(b) [a]ll enforcement procedures pursuant to the judgment … shall cease," and "(c) [a]ny lien created by an enforcement procedure pursuant to the judgment is extinguished." (§ 683.020.) Thus, section 683.020 contains a consequence or penalty for noncompliance —once 10 years expires without the judgment being renewed it cannot be enforced. (*Green v. Zissis* (1992) 5 Cal.App.4th 1219, 1222.) Because section 683.020 dictates the period for enforcement of judgments and mandates that enforcement cease at the end of that period, the deadline is jurisdictional. (See, e.g., *Kabran*, *supra*, 2 Cal.5th at p. 346 ["[b]ecause sections 659 and 660 dictate when litigation over a new trial motion may begin and when it must end, those deadlines are strictly enforced as jurisdictional"].)

Accordingly, we conclude Angelita may raise the enforceability issue in this appeal.[5]

### The 2012 Order is Not a Judgment Within the Meaning of Section 683.020

Whether the 2023 judgment is void depends on whether the 2012 order is a judgment within the meaning of section 683.020. If it is, the trial court could not enforce the 2012 order by entering the 2023 judgment because the 10-year enforcement period of section 683.020 had expired when Ezequiel filed his October 2012 motion to authorize sale of the property. If it is not, then the trial court retained jurisdiction to enter the 2023 judgment under section 664.6 and the terms of the parties' settlement.

---

[5]     Ezequiel asserts Angelita also forfeited the issue by arguing in the trial court that the settlement agreement was invalid. Since we have concluded that the validity of the 2023 judgment involves the trial court's fundamental jurisdiction, Angelita's position below is irrelevant to our decision.

The 2012 motion to enter judgment was made under section 664.6, which authorizes a court, upon motion, to "enter judgment pursuant to the terms of the settlement." (§ 664.6, subd. (a).) This provision contemplates entry of a formal judgment pursuant to the terms of the settlement agreement. (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182–1183; *Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 995.) With respect to motions brought under section 664.6, the " 'rendition or giving of judgment" is distinguished from "the 'entry' of a judgment which is merely a ministerial act." (*Casa de Valley View Owner's Assn. v. Stevenson* (1985) 167 Cal.App.3d 1182, 1193.) Thus, while an order granting a section 664.6 motion "is 'rendered' as soon as the decision is entered" in the court's minutes, that act is separate from "entry of a formal judgment reflecting the court's rendition of judgment in conformity with the stipulated settlement." (*Casa de Valley View*, at p. 1193.)

Angelita argues the 2012 order *was* a judgment because it was a "final determination of the rights of the parties in an action or proceeding." (§ 577.) In support of this argument, Angelita relies on *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, in which our Supreme Court addressed the question of whether a ruling that disposed of all causes of action framed by the pleadings was an appealable judgment. (*Id.* at pp. 697, 698.) Our high court concluded: "When, as here, a trial court's order from which an appeal has been taken disposes of the entire action, the order 'may be amended so as to convert it into a judgment encompassing actual determinations of all remaining issues by the trial court …, and the notice of appeal may then be treated as a premature but valid appeal from the judgment.' " (*Id*. at p. 700.)

Angelita relies on two appellate decisions that employed the principle articulated in *Griset* to appeals from orders granting motions under section 664.6 where no formal judgment was entered: *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1251–1252 and *Hines*, *supra*, 167 Cal.App.4th at page 1183. In *Hines*, the trial court issued a minute order granting a motion for entry of judgment under section 664.6 with its tentative ruling

13.

attached but failed to file a formal judgment.  (*Hines*, at p. 1181.)  On appeal from the order granting the motion, the appellate court addressed whether the order was appealable.  (*Id.* at p. 1183.)  Citing to the principle in *Griset* that allows an appellate court to "amend an order to include a judgment if the effect of the order is to finally determine the rights of the parties in the action," the Court of Appeal concluded "the effect of the order here was to finally determine the rights of the parties in this action by enforcing the settlement agreement," therefore, it would "amend the order to include an appealable judgment so as to expedite appellate review."  (*Hines*, at p. 1183.)

The order, however, did not comply with section 664.6, as it failed to accurately reflect the parties' agreement since it omitted material terms of the settlement.  (*Hines*, *supra*, 167 Cal.App.4th at p. 1185.)  Accordingly, the Court of Appeal modified the appealed order to include an appealable judgment and reversed the judgment with directions to the trial court to either enter a formal judgment setting forth all the material settlement terms that had yet to be fully performed or deny the motion if it found the parties failed to agree to all material terms.  (*Id.* at pp. 1185–1186.)

In *Critzer*, the trial court, faced with competing settlement agreements, found one of the agreements accurately memorialized the terms of the parties' settlement agreement and that agreement would be " 'binding on all parties as an Order of this Court.' "  (*Critzer*, *supra*, 187 Cal.App.4th at pp. 1247–1248.)  On appeal, the respondent asked the appellate court to summarily dispose of the appeal on the ground the order was not appealable.  (*Id.* at p. 1250.)  The Court of Appeal declined this request, concluding the order was appealable because it finally disposed of the litigation and there was nothing left for the court to do other than enforce the order.  (*Id.* at p. 1252.)  Citing to *Hines*, the Court of Appeal concluded that while "it would have been preferable for the court to have disposed of the [respondent's] motion by entering judgment as specified in section 664.6, the order here finally determined the rights of the parties."  (*Critzer*, at p. 1252.)

Therefore, as in *Hines*, the Court of Appeal amended the order to include an appealable judgment to expedite appellate review. (*Critzer*, at p. 1252.)

Angelita contends the logic of these cases applies equally to the legal effect of the 2012 order, namely, even though a formal judgment was not entered, an enforceable judgment was created since the 2012 order finally determined the rights of the parties to the litigation. She therefore asks us to amend the 2012 order "*nunc pro tunc*, to include a judgment," as the courts did in *Hines* and *Critzer*.

The cases Angelita relies on, however, are distinguishable from the present case, as here we are not determining whether the 2012 order is appealable and amending the order to include a judgment for purposes of expediting the appeal. Rather, we must determine whether the 2012 order should be construed as a judgment for purposes of section 683.020.

Under the Enforcement of Judgments Law, "a judgment is enforceable … upon entry." (§ 683.010.) As stated in section 683.020, the 10-year period of enforceability applies only to money judgments and judgments for the possession or sale of property, and the period of enforcement runs from "the date of entry" of the judgment.[6] Since the 2012 order does not include any of the terms of the settlement agreement, on its face it does not order the payment of money or the sale of property. Consequently, even if we amended the 2012 order to state it is a judgment, the judgment would not fall within the types of judgments that are subject to the 10-year enforcement period of section 683.020.

Angelita, however, asks us to not only amend the 2012 order to include a judgment but also so that it reflects the terms of the parties' settlement agreement attached to Ezequiel's 2012 motion. The parties appear to agree that this would require us to amend the 2012 order, which the trial court determined was a final order, nunc pro tunc.

---

[6]     A " '[m]oney judgment' " is defined as "that part of a judgment that requires the payment of money." (§ 680.270.) " 'Property' " is defined as including "real and personal property and any interest therein." (§ 680.310.)

Courts have the inherent power to correct clerical errors, but not judicial errors, nunc pro tunc in final orders and judgments. (See, e.g., *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544; *Bastajian v. Brown* (1941) 19 Cal.2d 209, 214; *Estate of Goldberg* (1938) 10 Cal.2d 709, 715–717; see also § 473, subd. (d).) Courts cannot change a final order "even though made in error, if in fact the order made was that intended to be made." (*Estate of Eckstrom*, at p. 544.)

In exercising this power, a court " 'is not authorized to do more than to make its records conform to the actual facts, and cannot, under the form of an amendment of its records, correct a judicial error, or make of record an order or judgment that was never, in fact, given…. [Citations.]' [Citation.] [¶] It is not the function of a *nunc pro tunc* order 'to make an order now for then, but to enter now for then an order previously made.' " (*Siegal v. Superior Court* (1968) 68 Cal.2d 97, 101.) " 'The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by the trial judge?' " (*Estate of Eckstrom*, *supra*, 54 Cal.2d at p. 544.) There is no time limit to correcting such mistakes by a nunc pro tunc order (*Estate of Goldberg*, *supra*, 10 Cal.2d at p. 717), and corrections can be made "either before or after an appeal has been finally determined" (*Boust v. Superior Court* (1912) 162 Cal. 343, 345). An appellate court may direct the trial court to amend an order *nunc pro tunc.* (*Larson v. Barnett* (1950) 101 Cal.App.2d 282, 290.)

Here, from the face of the 2012 order, the trial court entered the order it intended—it granted the motion for entry of judgment and directed Ezequiel's attorney to submit a proposed judgment for signature. While the trial court *rendered* the judgment by granting the motion, it did not intend to then *enter* judgment, as it directed the attorney to prepare a proposed judgment that presumably would encompass the settlement agreement's terms. (*Casa de Valley View Owner's Assn. v. Stevenson*, *supra*, 167 Cal.App.3d at p. 1193 [with respect to motions under § 664.6, the rendition of judgment is distinguished from the entry of judgment].)

16.

It is not apparent on the face of this record that the trial court intended the 2012 order to include the settlement agreement's terms or serve as the judgment. This is confirmed by the trial court's explanation in its 2023 order that it determined the enforceability of the settlement agreement at the September 2012 hearing, and the trial court's entry of judgment in 2023. Angelita asserts the 2023 judgment was unnecessary because the 2012 order was an enforceable judgment and by his 2022 motion, Ezequiel was seeking to enforce what he believed was an existing judgment. The trial court, however, viewed the motion as one to enforce the settlement agreement rather than to enforce an existing judgment, presumably because a judgment had not been entered. Given that the 2012 order did not contain the terms of the parties' settlement, the trial court did not err in determining that a judgment had not been entered.

Angelita nevertheless asserts that in 2012, the trial court intended to enter judgment as requested in Ezequiel's 2012 motion because the 2012 order instructed counsel to provide a proposed judgment. But this misconstrues the principle of amending orders nunc pro tunc—we can only amend an order to make it conform to the order the trial court in fact made. When the trial court made the 2012 order, although it clearly granted Ezequiel's request to enter judgment, it did not then enter a judgment, append the settlement agreement to the order, or include the settlement agreement's terms in the order; rather, it ordered Ezequiel's attorney to prepare the judgment. This indicated the trial court intended the entry of judgment to occur, not when the 2012 order was entered, but later, after formal judgment was presented to it for signature.

Angelita asserts that section 664.6 does not envision a piecemeal process by which the trial court may approve the settlement and then, in response to a second motion filed years later, enter the settlement as the judgment. While we agree that section 664.6 does not contemplate the entry of judgment years later, we are constrained by the principles of nunc pro tunc and can only amend the 2012 order to include the judgment if the trial court intended the order to include a judgment. Angelita asserts that *Hines* and *Critzer*

17.

grant us the authority to amend the judgment, but these cases involved non-final orders that could be amended to expedite appellate review. The 2012 order, however, is final and cannot be amended except under the principles of nunc pro tunc, which does not apply here.

Angelita asserts amending the 2012 order to include a judgment as of September 5, 2012, is "in keeping with the legislative intent" (unnecessary capitalization omitted) behind section 644.6. She contends that allowing a party to wait over 10 years to complete the process of obtaining a judgment under section 664.6 is inconsistent with the legislative intent that section 664.6 provide "an expedient and cost effective means of enforcing a settlement agreement" (*City of Fresno v. Maroot* (1987) 189 Cal.App.3d 755, 762), and relieve the justice system "of the burden of more time-consuming and expensive processes" (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1298). She argues that Ezequiel "should not have been permitted to simply 'pick up where he left off' ten years earlier" and ask the trial court to rule the same way it did in September 2012.

We recognize that obtaining a judgment under section 664.6 is intended to be an expedient process. But we cannot amend the 2012 order nunc pro tunc to include a judgment and the settlement terms if the trial court did not intend the order to serve as the judgment. Moreover, Angelita's real complaint is not the expediency of the section 664.6 process has been offended, but rather, that Ezequiel delayed in enforcing the settlement. As Ezequiel points out, Angelita and her attorney could have caused judgment to be entered by submitting a proposed judgment themselves when it was apparent that a proposed judgment had not been submitted if they wanted to start the running of the enforcement period. (See Cal. Rules of Court, rule 3.1312(a), (d).)

In sum, the 2012 order, even if interpreted as a judgment, is not a money judgment or a judgment for the sale of property, and therefore is not subject to the 10-year enforceability period of section 683.020. While Angelita asks us to amend the 2012 order

to include the settlement agreement's terms nunc pro tunc, we cannot do so as the trial court did not intend to include those terms in the order but rather to include them in the judgment. Since the enforceability period had not even begun to run when the trial court entered the 2023 judgment, the trial court had jurisdiction to enter that judgment.

## **DISPOSITION**

The judgment is affirmed. Costs on appeal are awarded to respondent.


DE SANTOS, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SMITH, J.

19.